UNITED STATES, Appellee

v.

Andrew W. SMEAD, Staff Sergeant
U.S. Marine Corps, Appellant

No. 08-0376

Crim. App. No. 200201020

United States Court of Appeals for the Armed Forces

Argued January 12, 2009

Decided July 27, 2009

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, and STUCKY, JJ., joined. RYAN, J., filed a separate
opinion concurring in the judgment, in which ERDMANN, J.,
joined.


Counsel


For Appellant: Captain S. Babu Kaza, USMC (argued).


For Appellee: Lieutenant Commander Paul D. Bunge, JAGC, USN
(argued); Brian K. Keller, Esq.(on brief); Commander Paul
LeBlanc, JAGC, USN, and Captain Geoffrey S. Shows, USMC.


Military Judge: R. C. Harris


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Smead, No. 08-0376/MC

Chief Judge EFFRON delivered the opinion of the Court.

In the present case, we review the decision of the United States Navy-Marine Corps Court of Criminal Appeals in United States v. Smead (Smead III), No. NMCCA 200201020, 2008 CCA LEXIS 6, 2008 WL 142112 (N-M. Ct. Crim. App. Jan 10, 2008) (unpublished) (affirming the findings and sentence approved by the convening authority after a rehearing). The case has a complex procedural history, described in Part I of this opinion, involving Appellant's court-martial, a rehearing, two pretrial agreements, various actions and omissions related to implementation of the pretrial agreements, and three proceedings before the Court of Criminal Appeals.

In the pretrial agreement entered into by the parties at Appellant's initial hearing, Appellant agreed to plead guilty to a number of the charges against him, and the convening authority agreed to withdraw and dismiss the balance of the charges with prejudice. The pretrial agreement also provided that Appellant would be confined at the Miramar base brig so that he could complete a sex offender treatment program. The agreement further provided for a delayed effective date with respect to any reduction of Appellant's pay grade. In the first appellate proceeding, the Court of Criminal Appeals concluded that the Government failed to comply with the provisions of the agreement regarding confinement at Miramar and the effective date of the

reduction in rank.  United States v. Smead (Smead I), 60 M.J.
755, 756-57 (N-M. Ct. Crim. App. 2004).  The court returned the
record to the convening authority with specific options for
corrective action.  Id. at 758.

In the second appellate proceeding, the court found that
the convening authority failed to comply with the court's remand
order in Smead I with respect to the effective date of the
reduction in pay grade.  The court set aside the findings and
sentence and ordered a rehearing.  United States v. Smead (Smead
II), No. NMCCA 200201020 (N-M. Ct. Crim. App. Jun 22, 2005)
(unpublished).

At Appellant's rehearing, the Government reinstated all
charges against Appellant, including -- over Appellant's
objection -- the charges that had been dismissed with prejudice
at the first court-martial.  The parties then entered into a new
pretrial agreement, which included new sentencing provisions and
dismissal with prejudice of the charges previously dismissed
after Appellant's first court-martial.  The Court of Criminal
Appeals subsequently affirmed the results of the rehearing, as
modified by the convening authority in accordance with the
second pretrial agreement.  Smead III, 2008 CCA LEXIS 6, 2008 WL
142112.

On Appellant's petition, we granted review of the following
issue:

> WHETHER APPELLANT SUFFERED PREJUDICE, FOR
> PURPOSES OF ARTICLE 59(A), UCMJ, WHERE THE
> CHARGE OF RAPE OF A CHILD, WITHDRAWN AND
> DISMISSED "WITH PREJUDICE" AT APPELLANT'S
> FIRST COURT-MARTIAL, WAS REINSTITUTED AT
> APPELLANT'S REHEARING.

After oral argument, we requested supplemental briefing on the following issue:

> WHETHER THE COURT OF CRIMINAL APPEALS ERRED
> IN HOLDING THAT THE CHARGE OF RAPE OF A
> CHILD, WITHDRAWN AND DISMISSED "WITH
> PREJUDICE" AT APPELLANT'S FIRST COURT-
> MARTIAL COULD BE REFILED PRIOR TO
> APPELLANT'S REHEARING.

For the reasons set forth in Part II, we conclude under the particular circumstances of this case that the Government at the rehearing improperly reinstated charges previously dismissed with prejudice. In that regard, we note that the Government failed to implement several provisions of the initial pretrial agreement, and compounded its errors by failing to implement the order of the court below on remand. We also note that the Government did not negotiate an agreement providing for withdrawal from the pretrial agreement under applicable circumstances, and that the proceedings did not otherwise involve conditions authorizing reinstatement of previously dismissed charges.

With respect to prejudice, we conclude that the error in reinstating the charges was not prejudicial under the circumstances of this case, including consideration of the

findings and sentence approved by the convening authority under the second pretrial agreement.  See Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859 (2000).

## I.  BACKGROUND
### A.   THE INITIAL COURT-MARTIAL

1.  The charges

On September 6, 2001, the convening authority referred the following charges against Appellant for trial by general court-martial:  receipt and possession of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000) (seven specifications); indecent acts with a child, in violation of Article 134; failure to obey a lawful general regulation, in violation of Article 92, UCMJ, 10 U.S.C. § 892 (2000); and rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2000).

2.  The pretrial agreement between Appellant and the convening authority

The convening authority and Appellant entered into a pretrial agreement on December 7, 2001.  Appellant agreed to request trial by judge alone, waive trial by members, enter into a stipulation of fact, not object to certain prosecution exhibits, not request the presence at trial of out-of-area witnesses, and waive any motions under Rules for Courts-Martial (R.C.M.) 905(b), 906, and 907(b)(2).  Appellant agreed to plead

guilty to four of the seven child pornography specifications and to the offense of indecent acts with a child with the understanding that he would plead not guilty to the remaining charges -- violation of a lawful regulation, three child pornography specifications, and rape. The convening authority and Appellant agreed to the following disposition of the remaining charges:

> In return for my plea(s) of guilty, and following the military judge's acceptance of my plea(s) in paragraph 10 [the description of charges and pleas], the convening authority agrees to withdraw the language and charge(s) and/or specification(s) to which I have pled Not Guilty.

The agreement further provided:

> Upon announcement of the sentence by the military judge, the withdrawn language and/or charge(s) and specification(s) will be dismissed with prejudice by the convening authority.

In return for Appellant's guilty pleas, the convening authority agreed to suspend any confinement in excess of twelve years and to waive automatic forfeitures and suspend any reduction in pay grade below E-6 for six months or until the end of Appellant's active duty service date. The convening authority also agreed that Appellant would serve any confinement adjudged at the Marine Corps Miramar Base Brig. The agreement noted Appellant's understanding "that the purpose for this is so I can attend the sexual offender rehabilitation class available

6

at the Miramar brig." If Appellant failed to complete the sexual offender treatment program, he would lose the benefit of the sentencing limitation portion of the pretrial agreement.

The agreement contained two provisions permitting the convening authority to withdraw from the agreement at specified times. First, during the period before trial, if Appellant violated any provision of the agreement or committed misconduct under the UCMJ, the convening authority could withdraw from the agreement. Second, during the period between trial and announcement of the sentence, if the guilty plea did not remain in effect for any reason, the convening authority could withdraw from the agreement.

The parties agreed that the "agreement constitutes all the conditions and understandings of both the Government and [Appellant] regarding the pleas and sentence limitations in this case."

3.   The plea inquiry

At the initial court-martial, held on September 21, 2001, Appellant entered pleas in accordance with the pretrial agreement, pleading guilty to the indecent act offense and to four of the child pornography offenses, while entering not guilty pleas to the remaining charges. The military judge conducted a providence inquiry into each of the offenses to

which Appellant pled guilty to ensure the voluntariness and accuracy of the pleas.  See R.C.M. 910(d)-(e).

The military judge also conducted an inquiry into the plea agreement to ensure that Appellant understood the agreement, to ascertain whether the parties agreed to the terms therein, and to determine whether the agreement complied with rules governing pretrial agreements in R.C.M. 705.  See R.C.M. 910(f).  In summarizing the "ways by which the agreement could become null and void," the military judge focused on circumstances arising prior to the announcement of the sentence under which the convening authority could withdraw from the agreement.  The military judge also noted that Appellant could forfeit the suspension provisions of the sentencing agreement as a result of subsequent misconduct but did not identify any post-trial circumstance in which the agreement would become null and void in its entirety.  With respect to confinement, the military judge noted Appellant's agreement to enroll in and complete the sexual offender treatment program, the convening authority's agreement to confine Appellant at the Miramar brig, and the possibility of confinement at a place other than Miramar upon completion of the sexual offender treatment program.  Appellant agreed with the military judge's explanation of the pretrial agreement, as did counsel for both parties.

After accepting Appellant's pleas of guilty, the military judge engaged trial counsel in the following colloquy with respect to the remaining offenses:

> MJ:  [D]oes the government intend to go forward on the offenses to which the accused has entered pleas of not guilty?
>
> TC:  No, sir.  The government intends to withdraw that without prejudice to ripen into prejudice upon announcement of sentence, sir.
>
> MJ:  Your request is granted.

4.    Findings and sentence

The military judge found Appellant guilty of the five offenses to which he had entered guilty pleas.  [R. 53-54] During the sentencing proceeding, Appellant gave an unsworn statement, which included a variety of apologies and the following statement:  "My goal right now, first and foremost, is to get whatever counseling I can get so nothing like this would ever happen again."

The military judge ruled that twenty-seven years of confinement was the maximum confinement that could be imposed in the case.  Trial counsel, in his sentencing argument, asked for a minimum of seventeen years of confinement, and the defense suggested five years.  Defense counsel, in the course of his closing statement, offered the following observation:

> Should he be in prison?  Probably, because he's got some problems that he needs to deal

9

> with; and there is a place in Miramar, in
> Miramar brig, where he can be rehabilitated.
> And he clearly wants to be part of that
> program. He wants to do whatever he can.

The military judge adjudged a sentence that included confinement for twenty-four years, reduction to pay grade E-1, and a dishonorable discharge. The military judge also recommended that the convening authority consider suspension of confinement in excess of eighteen years for a period of nine years and deferral of automatic forfeitures and recommended that the convening authority prohibit Appellant from using a computer.

## 5. The convening authority's action

Following trial, the staff judge advocate (SJA) prepared a recommendation for the convening authority to consider prior to taking action on the results of trial. See Article 60(d), UCMJ, 10 U.S.C. § 860(d); R.C.M. 1106. The SJA noted that Appellant "was arraigned, and tried" on each of the charged offenses. Under the heading "RESULTS OF TRIAL," the SJA listed each of the charged offenses, noting the offenses in which there was a finding of guilty. With respect to each offense to which Appellant had pled not guilty, the SJA entered the following: "Finding: Withdrawn with Prejudice." The recommendation also described the impact of the pretrial agreement on the maximum

10

sentence and the military judge's clemency recommendation and contained a proposed action.

After defense counsel submitted a response to the SJA's recommendation, the SJA prepared an addendum that: (1) noted the defense request for clemency; (2) recommended partial approval in terms of permitting computer access; and (3) provided the convening authority with a proposed action. See Article 60(b), UCMJ, 10 U.S.C. § 860(b) (2000); R.C.M. 1106.

The convening authority approved the action recommended by the SJA and issued a promulgating order, dated March 5, 2002. With respect to each offense to which Appellant had pled guilty, the order noted the finding of guilty. With respect to each offense to which Appellant had pled not guilty, the order provided the following description: "Plea: Not Guilty. Finding: Withdrawn with Prejudice."

In the promulgating order, the convening authority approved the sentence, with several modifications conforming to the pretrial agreement, including suspension of confinement in excess of twelve years, designation of the brig at Miramar as the place of confinement, and waiver of automatic forfeitures for six months for the benefit of Appellant's wife. The promulgating order also transmitted the record of trial to the SJA of the Navy for review by the Navy-Marine Corps Court of Criminal Appeals under Article 66, UCMJ, 10 U.S.C. § 866 (2000).

11

### B. THE FIRST REVIEW BY THE COURT OF CRIMINAL APPEALS
### (Smead I)

Before the Court of Criminal Appeals, Appellant asserted that his plea was improvident because he did not receive the benefit of the pretrial agreement's provision regarding confinement at Miramar. See Smead I, 60 M.J. at 756-57. The defense noted that Appellant had been assigned to Miramar and then transferred to Fort Leavenworth without being enrolled in the two-year sexual offender treatment program. The defense brief stated:

> Appellant bargained to be confined at Miramar so that he could rehabilitate himself and never again commit the type of acts for which he was convicted. . . . Appellant would not have entered into a pretrial agreement without such a provision . . . .

The defense further stated that under applicable regulations, the convening authority did not have discretion to order a long-term prisoner, such as Appellant, to Miramar, a fact that "apparently was misunderstood not only by Appellant, but also by trial defense counsel, government trial counsel, the military judge, and the convening authority as well." As a remedy, the defense requested that the Court of Criminal Appeals "set aside the findings and sentence and remand the case to an appropriate Convening Authority who may either dismiss the Charge and specifications there under or order a rehearing."

The defense also contended that the plea was improvident with respect to Appellant's understanding of the sentencing provisions of the pretrial agreement; that the plea inquiry did not establish a factual basis for several specifications; and that the absence of certain documents from the record warranted reversal.

With respect to the allegation of error regarding confinement at Miramar, the Government asserted that Appellant's initial assignment to Miramar satisfied the terms of the agreement because he was on notice regarding the possibility of a transfer.  The Government, while rejecting other claimed errors, noted that the convening authority had erred by ordering a reduction in grade prior to the date contemplated in the pretrial agreement and recommended that the Court of Criminal Appeals take corrective action.  The Government, however, did not raise as a concern or otherwise suggest to the court that any corrective action was required with respect to the convening authority's action, which had treated the charges to which Appellant pled not guilty as "withdrawn with prejudice."  See R.C.M. 1107(f)(2) (providing that a reviewing authority may direct the convening authority to "modify any incomplete, ambiguous, void, or inaccurate action noted in review of the record").

13

United States v. Smead, No. 08-0376/MC

The Court of Criminal Appeals agreed with Appellant's contention that his plea was improvident because the Government breached a material term of the pretrial agreement by transferring Appellant to Fort Leavenworth before he could complete the two-year sex offender treatment program at Miramar. Smead I, 60 M.J. at 756-57. The court identified the components of an appropriate remedy, including "specific performance of the agreement or an opportunity for the accused to withdraw from the plea" as well as the option of a post-trial agreement. Smead I, 60 M.J. at 757 (quoting United States v. Smith, 56 M.J. 271, 273 (C.A.A.F. 2002)) (citing Smith, 56 M.J. at 279; United States v. Perron, 58 M.J. 78, 86 (C.A.A.F. 2003)). The court rejected Appellant's remaining assignments of error. Id. at 758.

In light of the Government's failure to comply with the terms of the pretrial agreement regarding assignment to Miramar, id. at 757, the Court of Criminal Appeals ordered a remand to a convening authority, subject to the following options:

> The CA [convening authority] may (1) set aside the findings and sentence and if appropriate authorize a rehearing; or (2) grant specific performance by securing the appellant's transfer to the MCAS Miramar Brig, so that the appellant can participate in the 2-year sexual offender rehabilitation course; or (3) provide alternative relief that is satisfactory with the appellant. . .

Id. at 758.

14

On a separate matter, the court agreed with the Government's concession that the convening authority erred in implementing the effective date provisions for reduction in rank under the pretrial agreement. Id. at 757-58. In contrast to its treatment of the Miramar issue, the court did not identify the reduction in rank as a matter involving providence of the pleas. The court noted the defect and ordered the convening authority to take corrective action with respect to the effective date of the reduction in grade. Id. Although the decision contained rulings adverse to both parties, neither party sought further review in our Court. See Article 67(a), UCMJ, 10 U.S.C. § 867(a) (2000).

C. THE SECOND REVIEW BY THE COURT OF CRIMINAL APPEALS
(SMEAD II)

On January 19, 2005, the Court of Criminal Appeals notified the parties that the record had been returned to the court. The notice invited further briefing and attached two documents that reflected the action taken in response to the court's earlier decision. The first attachment, a memorandum from corrections officials to the Navy Personnel Command, noted that "the Navy-Marine Corps Court of Criminal Appeals has determined that the Government did not comply with the pre-trial agreement requiring attendance in the 2-year sexual offender program" at Miramar. The memorandum then requested approval to transfer Appellant

15

from Leavenworth to Miramar "[p]ursuant to the recommended remedies" in the court's decision "for the purpose [of Appellant] attend[ing] the required sexual offender program." The second attachment, a memorandum from the Navy Personnel Command, approved Appellant's transfer to Miramar "for the purpose of attending the Sex Offender Treatment Program."

In response to the notice, the defense submitted a brief that raised three issues. First, the defense noted that the Government had not complied with the court's order to the convening authority with respect to correction of the effective date of the reduction in grade. According to the defense, because the Government's noncompliance resulted in substantial financial harm to Appellant and his family, belated financial compensation would not provide an adequate remedy. The defense asked the court to remand the case to the convening authority with the option of either dismissing the charges or ordering a rehearing.

In the second issue, the defense characterized the initial transfer to Leavenworth as an intentional breach of the pretrial agreement. The defense contended that the delay in returning Appellant to Miramar had a number of adverse consequences, including loss of opportunity for clemency or parole, a further delay of more than six months before the beginning of the next treatment program at Miramar, and the loss of all privileges

earned at each institution upon the occasion of each transfer. As a remedy, Appellant asked the Court of Criminal Appeals to reassess the sentence and disapprove at least thirty-three months of confinement.

In the third issue, the defense asserted improper post-trial delay based upon the passage of 165 days between the time of the court's prior decision and the transfer to Miramar. As a remedy for post-trial delay, the defense asked the court to set aside the findings and sentence and dismiss the charges.

With respect to the first issue, the Government acknowledged noncompliance with the court's remand order to correct the effective date of the reduction in rank to comport with the pretrial agreement. Citing United States v. Perron, 58 M.J. 78, 86 (C.A.A.F. 2003), the Government identified three remedies available to Appellant:

> (1) withdrawal of his pleas of guilt, which should then result in a rehearing at which he will be subject to the previous sentence adjudged if he does not plead guilty[]; (2) specific performance of the provision in the pretrial agreement regarding the reduction, which should then entitle Appellant to recoup the pay at issue; or (3) a post-trial plea agreement 'to avoid a contest to the providence of the plea.'"

The Government further noted that under Perron, neither the court nor the Government could impose a particular remedy on Appellant in this situation, and the Government asked the court

17

to "issue an order that directs Appellant to file a written response to the Court, stating which of these three remedies he desires." As in Smead I, the Government in Smead II did not raise as a concern or otherwise suggest to the court that any corrective action was required with respect to the convening authority's action, which had treated the charges to which Appellant pled not guilty as "withdrawn with prejudice."

The Government addressed the second and third issues, regarding confinement and treatment at Miramar, by taking the position that the transfer from Miramar was not the result of bad faith. The Government also contended that the circumstances related to assignment to and from Miramar did not amount to prejudicial post-trial delay.

The Court of Criminal Appeals disposed of the case on June 22, 2005, in a brief per curiam opinion. Smead II, No. NMCCA 200201020. The court agreed with Appellant's first assignment of error, regarding failure to correct the effective date of the reduction in rank, noting that "the convening authority failed to comply with a material term of the pretrial agreement despite our prior remand and specific direction that he remedy this error through specific performance." Id. (citing Perron, 58 M.J. at 86; Smead I, 60 M.J. at 757-58; United States v. Castillo, 59 M.J. 600 (N-M. Ct. Crim. App. 2003) (addressing a

convening authority's failure to comply with a decision of the court)).

The court set aside "the findings of guilty and sentence," and returned the record for "remand to an appropriate convening authority who may order a rehearing" -- a remedy consistent with Appellant's request with respect to the first assigned error. Id. The court summarily denied the remaining assignments of error. Id. Neither party sought further review in our Court.

### D.   THE REHEARING

#### 1.   Re-referral of the original charges

On September 16, 2005, the convening authority referred the case for rehearing by a general court-martial, using the same set of charges that had been referred to the original court-martial in 2001. The referral raised the question of whether the convening authority could revive all of the charges and specifications which the convening authority had designated as "Withdrawn with Prejudice" when taking action after the original court-martial, including the rape charge.

#### 2.   Motions

In the first session of the rehearing, held on September 29, 2005, the military judge noted that the parties anticipated a motion on the validity of referring charges that had been withdrawn with prejudice. He urged the parties to file motions

within the dates set forth in his arraignment and trial schedule.

By the time of the next session, held on November 30, 2005, a new military judge had been detailed. The military judge listed the motions from the defense, including whether the Appellant should receive additional confinement credit for the convening authority's failure to comply with the pretrial agreement, and whether the noncompliance produced prejudicial post-trial delay. None of the motions on the list raised the question of whether the convening authority could refer to a subsequent court-martial the charges that previously had been withdrawn and dismissed "with prejudice." After disposing of all the motions submitted by the defense, some of which resulted in relief for Appellant, the military judge reminded the parties: "One of the issues that was mentioned [in the initial] . . . session was whether or not the [G]overnment can revive a withdrawal from prejudice in a situation where that was a term of the pretrial agreement."

In the absence of a motion or briefing, the military judge and the parties addressed the question primarily from the perspective of whether further proceedings would violate prohibitions against former jeopardy, whether the Government had acted in bad faith, and whether the convening authority's commitment to withdraw charges was tied to the continuing

20

validity of Appellant's guilty pleas.  They did not focus on the use of the term "withdrawn with prejudice" in the convening authority's action.  The military judge denied the defense motion to dismiss.  He observed that the Court of Criminal Appeals had set aside all the findings, that a rehearing under those conditions placed the parties in the position that they had occupied prior to the entry of pleas at the first trial, that the Government had not acted in bad faith, and that it was not unfair in those circumstances "to put both parties at the position of or use [the] status quo ante . . . [and] allow all of the charges to go forward."  The military judge also stated that he would permit the defense to reopen the issue if counsel developed evidence of bad faith or developed other factors warranting a second look at the issue.  At the conclusion of the motion session, Appellant entered pleas of not guilty to all charges and specifications.

3.  The new pretrial agreement

Several weeks later, on December 21, 2005, the convening authority and Appellant entered into a new pretrial agreement. As in the first agreement, Appellant agreed to request trial by judge alone, enter into a stipulation of fact, not request the presence at trial of out-of-area witnesses, plead guilty to indecent acts with a child, and plead not guilty to violation of a lawful regulation and rape.  At the first trial, Appellant had

pled guilty to four of the seven child pornography specifications; at the rehearing, Appellant agreed to plead guilty to three of the seven child pornography specifications, and to plead not guilty to the remaining four specifications.

With respect to the charges and specifications to which Appellant would plead not guilty, the new pretrial agreement provided that the charges would be withdrawn by the convening authority and dismissed with prejudice, using terms similar to the first pretrial agreement:

> I understand and agree that, in return for my pleas of guilty, and following the military judge's acceptance of my pleas . . . , the convening authority will withdraw the charges and specifications to which I have pled not guilty. After announcement of the sentence by the military judge, the withdrawn charges and specifications will be dismissed by the convening authority with prejudice.

In return for Appellant's guilty pleas, the convening authority agreed to suspend any confinement in excess of 108 months, a reduction of thirty-six months in unsuspended confinement compared to the period of unsuspended confinement under the first agreement.

The balance of the agreement contained provisions similar in effect to the first pretrial agreement with respect to matters such as misconduct, withdrawal from the agreement, and cancellation of the agreement. In addition, the agreement

contained a variety of provisions regarding pay, administrative discharge, and other matters not at issue in the present appeal. The agreement specifically stated that Appellant was "entering into this agreement freely and voluntarily. Nobody has made any attempt to force or coerce me [Appellant] into making this agreement or into pleading guilty."

4.   The plea inquiry and entry of findings at the rehearing

At the rehearing, on January 25, 2006, Appellant entered pleas in accordance with the pretrial agreement. The military judge conducted a providence inquiry into the offenses and the terms of the pretrial agreement. Appellant, who expressed satisfaction with counsel, confirmed that he freely and voluntarily entered into the pretrial agreement. He also confirmed that no one coerced him into signing the agreement or pleading guilty. Neither Appellant, nor his counsel, raised any matter inconsistent with the voluntariness of his pleas or his participation in the plea agreement.

With respect to the offenses to which he was pleading not guilty, the military judge and Appellant engaged in the following colloquy:

> MJ:  Okay.  The next paragraph indicates
> that the convening authority, through the
> trial counsel, will withdraw the charge and
> specifications to which you pled not guilty
> and that upon announcement of [the] sentence
> the withdrawal will be with prejudice.

Do you understand that?

ACC:  Yes, sir.

MJ:  Do you understand that that is a provision that is a benefit to you?

ACC:  Yes, sir.

MJ:  That once they are withdrawn with prejudice they can no longer be brought against you.

Do you understand that?

ACC:  Yes, sir.


The military judge engaged counsel in the following discussion as he concluded the plea agreement inquiry:

MJ:  Do you have any questions concerning the terms of your pretrial agreement?

ACC:  No, sir.

MJ:  Do the parties concur with the court's interpretation of the terms of the pretrial agreement?

TC:  Yes, sir.

DC:  Yes, sir.

MJ:  Very well.  Do you have any questions concerning your pleas of guilty, the pretrial agreement or any other matter we have discussed up to this point?

ACC:  No, sir.

MJ:  At this point I find the pretrial agreement to be in accordance with appellate case law, not contrary to public policy or my own notions of fairness, and the agreement is accepted.

The military judge then returned to the subject of Appellant's pleas to the charges:

> MJ:  Do you have any questions concerning the meaning and effect of you[r] pleas of guilty?
>
> ACC:  No, sir.
>
> MJ:  Do you still wish to plead guilty?
>
> ACC:  Yes, sir.
>
> MJ:  I find that you have knowingly, intelligently and consciously waived your right to a trial of the facts by the court-martial, to confront the witnesses against you and to remain silent.
>
> I further find that your pleas are made voluntarily and with a factual basis, and they are accepted.
>
> Do you have any motions, trial counsel, with respect to the offenses to which the accused entered pleas of not guilty?
>
> TC:  Yes, sir.
>
> At this time I ask that they be withdrawn and upon announcement of sentence they be dismissed with prejudice, sir.

The military judge reviewed the designation of each charge and specification affected by the withdrawal motion, confirmed with counsel for both parties that he would need to enter findings only with respect to the charges to which the accused entered pleas of guilty, and entered findings of guilty on those charges.  He then confirmed with both counsel that the findings "accurately reflect the terms of the pretrial agreement."

5.    Sentencing and related motions at the rehearing

After the parties presented sentencing witnesses and documentary evidence, the military judge sentenced Appellant to twenty years of confinement, a dishonorable discharge, and reduction to pay grade E-1.  He then examined the sentence limitation portion of the pretrial agreement, confirmed the parties' understanding that the maximum period of confinement under the agreement would be 108 months, and concluded that the agreement as a whole was lawful and appropriate.

The military judge then addressed a number of pending issues concerning the relationship between the initial trial and the rehearing, denying defense motions alleging illegal punishment during service of his initial sentence, failure to grant a speedy rehearing, failure to provide back pay during the period prior to the rehearing, post-trial delay amounting to cruel and unusual punishment, and failure to provide a timely transfer to Miramar amounting to cruel and unusual punishment.

In discussing the Miramar motion, the military judge noted that the Miramar issue had been the subject of the pretrial agreement during the initial trial but that matters concerning Miramar were not covered in the new pretrial agreement.  Defense counsel agreed, and emphasized that he was bringing a new motion for confinement credit based upon cruel and unusual punishment.

The military judge asked defense counsel if he agreed with the following summary of the defense position:

> [I]f I understand what you're saying, there were three remedies directed by the [C]ourt [of Criminal Appeals] in the initial ruling based on this.  One is to set aside findings and sentencing and authorize a rehearing; two, grant specific performance; or, three, provide alternative relief.  The convening authority failed to act on any one of those three and as a result of that the first option was executed. . . .
>
> As a result of that, it would appear that the accused has now received a three year break on this sentence.

Defense counsel agreed and asked for confinement credit on the grounds that the period spent in Leavenworth, rather than in Miramar, constituted cruel and unusual punishment.  The military judge denied the motion.

In a post-trial session, held on March 5, 2006, the military judge ordered 2,232 days confinement credit based on time served, good time credit, earned credit, and other credits related to the initial sentence.  The military judge and the parties then discussed whether, as a result of the appeal, Appellant would be disadvantaged by new regulations governing various credits that would add 263 days to his minimum release date.  In the course of that discussion, the military judge observed that Appellant had the benefit of a reduced period of unsuspended confinement under the new pretrial agreement.

Defense counsel acknowledged that Appellant "was able to get the benefit of a better pretrial agreement this time . . . [and] was able to shave three years off the sentence," but that he should also have the benefit of the credit regulations that would have been applied if a rehearing had not been required.

The Government opposed the defense motion, arguing that Appellant benefited from the reduction in the unsuspended sentence from twelve years to nine years and that any further reduction would be a windfall. The military judge rejected the Government's suggestion that he consider the twelve-year sentence under the initial pretrial agreement, and the reduction as a result of the rehearing and new agreement, as a reason for denying the defense motion. In the course of addressing the motion, the military judge set forth his understanding of the relationship between the initial pretrial agreement and the rehearing:

> MJ:  The problem [with relying on the sentence cap in the initial agreement] is that the government failed to comply with the terms of that agreement. . .
>
> . . . And so you got a rehearing on findings and sentence. . . .
>
> . . . So the mandate of the [C]ourt [of Criminal Appeals] was . . . back to square one, not guilty, enlisted members.  In fact the accused actually elected that, not guilty enlisted members . . . .
>
> So that whole 12-year thing is gone. . . .

28

> And it's gone because of government misconduct. . . . [T]he convening authority had . . . several options. One would be to bring the accused back here and comply with the terms of the agreement. Two, he could have reordered a hearing on findings and sentence. The convening authority delayed, for whatever reason and there's not any evidence to show why it was that he delayed for as long as he did, but it was long enough that the appellate courts said we're going to basically take the discretion away from the convening authority and disapprove the findings and sentence, and reordered a . . . rehearing on findings and sentence. . . .
>
> So what we have got is a situation where we are back here not by something that the accused did wrong but because of the government's [failure to] . . . comply with the terms of the agreement initially. And two, the failure of the government to comply with the mandate of the court. . . .
>
> And so I'm having a problem with that 12-year number [which] seems to me to be somewhat irrelevant at this point . . . .

Ultimately, the military judge granted the defense motion and provided Appellant with 263 days credit based upon the minimum release date calculations under the regulations in effect at the time of his initial confinement to ensure that his period of confinement was not affected adversely as a result of his successful appeal. The military judge noted that the Government breached the terms of the initial pretrial agreement by transferring Appellant to Leavenworth, "which ultimately led

. . . [the] Court of Criminal Appeals to order a rehearing on findings and sentence."

The military judge added that the case had been:

> returned for rehearing on findings and sentence based on the actions of the government in failing to comply with the terms of the initial pretrial agreement in this case. As a result of the rehearing, the accused received a significant reduction in sentence. However, this does not constitute a windfall to the accused as the rehearing resulted from the government's failure to . . . comply with the terms of the original agreement, and the convening authority negotiated anew with the accused for the terms of the agreement in this case.

He expressly rejected the proposition that convening authority had taken into account the changes in calculation of credits "as a basis for agreeing to the terms of the current pretrial agreement." In addition, he noted that if waiver of this issue had been contemplated, it could have been placed in the pretrial agreement.

6. The convening authority's action on the results of the rehearing

The SJA's post-trial recommendation, dated November 3, 2006, contained a three-column chart, with a column entry for each charge and specification, a column entry for the plea associated with each specification, and a column entry for the finding associated with each specification. For each specification for which Appellant had entered a plea of guilty,

the action listed the finding as "Guilty."  For each

specification for which Appellant had entered a plea of "Not

Guilty," the action listed the finding as "Withdrawn."  In a

separate entry regarding the pretrial agreement, the SJA noted

the sentence limitation of 108 months of unsuspended

confinement.  The SJA recommended approval of the sentence as

adjudged, subject to the limitations in the pretrial agreement.

Defense counsel submitted a clemency request on November

30, 2006, noting the illness of Appellant's mother, the amount

of confinement already served by Appellant, his efforts at

rehabilitation, his financial difficulties, and the adverse

impact of the Government's noncompliance with the initial

agreement on matters such as rehabilitation opportunities,

confinement credit, and parole.

Defense counsel asked the convening authority to consider

three specific actions:  (1) release Appellant from confinement

"as soon as possible"; (2) change the adjudged dishonorable

discharge to a bad-conduct discharge; and provide an additional

six days of confinement credit to correct an error in

calculation at trial.

In support of the request, defense counsel asked the

convening authority to:

> consider the fact that SSgt Smead has never
> hid[den] from his problems.  He accepted
> responsibility for his actions in 2001 and

> he did so again in 2006 by pleading guilty
> to the same offenses.  He did not put the
> government through a trial and hence, saved
> the government time and money.  He accepted
> responsibility for his actions from the very
> beginning . . . .

Defense counsel attached a letter from Appellant covering many of the same points in his own words.  Appellant's letter stated:

> I have worked very hard to learn from my
> mistakes.  I have never denied my actions,
> and take full responsibility for my
> shortcomings.

In an addendum dated December 4, 2006, the SJA recommended that the convening authority approve the six days of confinement credit and recommended against any additional clemency.

The convening authority issued a promulgating order on December 5, 2006, that adopted the SJA's recommendations.  The order used the same three-column format and wording as the SJA's recommendation for the charges and specifications.

### E.  THE THIRD REVIEW BY THE COURT OF CRIMINAL APPEALS (SMEAD III)

The Court of Criminal Appeals notified the parties on February 27, 2007, that the rehearing had been completed and the record was again before the court for appellate review.  The defense submitted three assignments of error:  (1) erroneous reinstitution at the rehearing of the rape charge that had been withdrawn and dismissed at the original trial; (2) unreasonable multiplication of charges with respect to two of the child

32

pornography specifications; and (3) denial of the right to timely post-trial review.

1.   The views of the parties regarding the status of the rape charge at the rehearing

With respect to the first issue, regarding inclusion of the rape charge at the rehearing, the defense contended that reviving the rape charge "tended to coerce the Appellant into a pretrial agreement beneficial to the Government."  In support of the assigned error, Appellant contended that reinstitution of the charge was unfair because there was insufficient evidence of penetration to support a charge of rape and that the plea of guilty to indecent acts encompassed the conduct at issue in the rape charge.  He also contended that reinstitution of the rape charge constituted impermissible prosecutorial vindictiveness, see North Carolina v. Pearce, 395 U.S. 711, 725 (1969), in response to Appellant's success in the earlier appeals.  In addition, the defense contended that reinstitution of the charge was unfair because it did not provide Appellant with the benefit of his agreement with the convening authority -- dismissal of the charge with prejudice.

Although the rape charge was dismissed at the rehearing, the defense asserted prejudice on the grounds that the charge of rape carried a potential punishment of life imprisonment, and "[t]he risk of possible punishment of confinement for life was a

33

major consideration in Appellant's decision to enter into a new pretrial agreement with the convening authority."  In support of the defense brief, Appellant submitted a declaration stating:

> When my case was remanded for a retrial, I was charged with all of the offenses for which I was originally charged, including a charge of rape of a child that was withdrawn and dismissed with prejudice at my first trial.  As this offense carried a possible life sentence, the withdrawal and dismissal of this rejuvenated offense was a major consideration in my decision to enter into a new pretrial agreement with the convening authority.  But for the government's obligation to withdraw and dismiss the rape charge, I do not believe that I would have entered into this pretrial agreement.

With respect to the status of the rape charge, the defense brief stated:  "Notwithstanding the earlier dismissal 'with prejudice' of the charge at issue in this case, Appellant concedes that this dismissal 'with prejudice' was illusory."  In that context, the defense did not contend before the Court of Criminal Appeals that the withdrawn charges had been dismissed with prejudice as a matter of law after the first trial.  Instead, the defense asserted that reinstitution of the rape charge against Appellant was unfair due to evidentiary issues, prosecutorial vindictiveness, and failure to provide Appellant with the benefit of the convening authority's initial agreement to dismiss the charge with prejudice -- all resulting in coercion with respect to the second pretrial agreement.  As a

remedy, the defense asked the court to set aside the findings and sentence and remand the case for a rehearing on charges that would exclude the rape charge.

The Government's answer included a description of the offenses to which Appellant had pled not guilty at the initial trial, including the rape charge, and stated: "Pursuant to the terms of the pretrial agreement those charges were subsequently withdrawn and dismissed." With respect to the charges at the rehearing, the Government noted that the rape charge "was again withdrawn and dismissed with prejudice." While noting that the double jeopardy clause does not preclude dismissal of charges prior to the introduction of evidence and does not preclude a later trial on those charges under United States v. Cook, 12 M.J. 448, 452 (C.M.A. 1982), the Government acknowledged that the present case could be distinguished from Cook. In particular, the Government observed that the decision in Cook expressly noted that the record of trial did not indicate that the withdrawal of charges was with prejudice. See id. at 454. The Government contrasted Cook with the present case, noting that "the dismissal of charges in this case appears to have been affected [sic] with prejudice." The Government made no effort to treat the rape charge as validly revived, but instead took the following position: "Assuming arguendo that the Government was precluded from re-referring the charge in question,

Appellant is not entitled to any relief as he suffered no prejudice from the re-referral of the charges at the rehearing." The Government then discussed prejudice in terms of the relative punishments available at both hearings, the relative actual punishments, and the voluntariness of Appellant's pleas at the rehearing.

In reply, the defense took note of the Government's statement that the charges at the first trial appeared to have been dismissed with prejudice, adding: "If, as the Government concedes, prejudice attached to the dismissal of the rape charge at Appellant's first court-martial, then the convening authority erred by rejuvenating this charge at Appellant's retrial." The defense then returned to its original argument, contending: "But even if this Court disagrees with the Government's concession that prejudice attached to the dismissal of this offense, the convening authority erred by unfairly rejuvenating this charge to coerce Appellant into entering a new pretrial agreement."

On May 21, 2007, the Court of Criminal Appeals issued an order for supplemental briefing related to the Government's position on the status of the rape charge. The order observed that the Government "admits that the charge had been dismissed with prejudice and should not have been referred at the second court-martial, but alleges that there was no error because the

charge was again withdrawn and dismissed by the terms of the pretrial agreement." The order directed the parties to brief the issue of whether trial defense counsel was ineffective for not informing Appellant during pretrial agreement negotiations that the rape charge had been referred improperly for trial at the rehearing.

In response, the defense took the position that trial defense counsel was not ineffective at the rehearing because the defense moved at the rehearing to dismiss the rape charge and the military judge had rejected that position. The Government concurred with the defense position. The Government did not express any disagreement with the court's characterization of the Government's position that the rape charge had been dismissed with prejudice and should not have been referred for trial at the second proceeding.

2.   The decision of the Court of Criminal Appeals

The Court of Criminal Appeals affirmed the findings and sentence, concluding that "under the unique circumstances existing in this case, the Government was not precluded from re-referring the allegation of rape against the appellant at his second court-martial." Smead III, 2008 CCA LEXIS 6, at *16, 2008 WL 142112, at *5.

In the course of describing the procedural history of the case, the court made a number of observations pertinent to the

present appeal.  The court viewed Smead I as a case involving
the Government's "material breach" of its promise to transfer
Appellant to Miramar, in which the Court provided the convening
authority with three options as a remedy:  (1) order a rehearing
after setting aside the findings and sentence; (2) grant
specific performance by securing Appellant's transfer to Miramar
so he could participate in the two-year rehabilitation program;
or (3) provide alternative relief satisfactory to Appellant.
2008 CCA LEXIS 6, at *5, 2008 WL 142112 at *2 (quoting Smead I,
60 M.J. at 758).

Regarding the posture of Smead II, the court in Smead III
stated:  "Inexplicably, the government failed to accomplish any
of the options directed."  2008 CCA LEXIS 6, at *5, 2008 WL
142112, at *2 (footnote omitted).  As a result, the court in
Smead II again was faced with a situation in which "the
convening authority failed to comply with a material term of the
pretrial agreement."  2008 CCA LEXIS 6, at *6-*7 n.4, 2008 WL
142112, at *2 n.4 (quoting Smead II, No. NMCCA 200201020, slip
op. at 1).  The court in Smead III offered the following
description of its action in Smead II and the aftermath:  "It
appears that after the findings and sentence of the appellant's
original court-martial were set aside by us with authorization
for a rehearing, the Government elected to simply re-refer all
charges originally alleged against appellant, without regard for

the prior dismissals 'with prejudice.'"  2008 CCA LEXIS 6, at *7, 2008 WL 142112, at *2.

The Court of Criminal Appeals concluded that the Government failed to provide Appellant with the benefit of his original bargain with the convening authority -- assignment to Miramar to participate in the two-year treatment program; that specific performance was no longer possible; and, in that context, his original pleas were improvident.  See 2008 CCA LEXIS 6, at *11, 2008 WL 142112, at *4.  In that context, the court offered the following description of the effect of its prior decisions:

> Our earlier action of setting aside the findings and sentence in this case had the effect of returning both the Government and the appellant to the status quo ante. (Citing, inter alia, United States v. Perron, 58 M.J. 78, 86 (C.A.A.F. 2003)) . . . . Where [the] findings and sentence have been set aside due to the Government's failure of performance on a material term of the pretrial agreement, the status quo ante is the position the parties were in prior to entry into the original pretrial agreement.

2008 CCA LEXIS 6, at *13-*14, 2008 WL 142112, at *4.  The court described Smead I and its effect, as follows:

> Accordingly, we hold that the prior dismissal of charges 'with prejudice' under the original pretrial agreement was rendered void ab initio by our decision in Smead I, leaving the Government free to re-refer all offenses originally alleged against the appellant.

39

2008 CCA LEXIS 6, at *14, 2008 WL 142112 at *4.  The court

concluded by providing the following description of the

relationship between Smead I and Smead II:

> Because we previously held in Smead I that
> the disputed term in the appellant's
> pretrial agreement was material, and that
> the Government failed (albeit in good faith)
> to deliver specific performance of that term
> (or an agreed upon or adequate alternative),
> our most appropriate remedy applying
> contract principles was to set aside the
> findings and sentence, returning the parties
> to the status quo ante.  This is what we did
> in Smead II.
>
> Accordingly, under the unique circumstances
> existing in this case, the Government was
> not precluded from re-referring the
> allegation of rape against the appellant at
> his second court-martial.

2008 CCA LEXIS 6, at *15-*16, 2008 WL 142112, at *5 (footnote

omitted).


## II.  DISCUSSION


Upon Appellant's petition, we granted review of the

decision by the Court of Criminal Appeals in Smead III.  The

issues on appeal concern the convening authority's obligation

under the original pretrial agreement to withdraw and dismiss

certain charges with prejudice upon announcement of the

sentence, Appellant's entry into a second pretrial agreement at

the rehearing, and the voluntariness of Appellant's guilty plea at the rehearing.

## A. REVIEW OF PLEAS AND PRETRIAL AGREEMENTS

A pretrial agreement in the military justice system establishes a constitutional contract between the accused and the convening authority. See United States v. Lundy, 63 M.J. 299, 301 (C.A.A.F. 2006). In a typical pretrial agreement, the accused foregoes certain "constitutional rights . . . in exchange for a reduction in sentence or other benefit. As a result, when interpreting pretrial agreements, 'contract principles are outweighed by the Constitution's Due Process Clause protections for an accused.' In a criminal context, the government is bound to keep its constitutional promises . . ." Id. (quoting United States v. Acevedo, 50 M.J. 169, 172 (C.A.A.F. 1999) (citations omitted)).

At trial, the military judge must ensure that the accused understands the pretrial agreement, the parties agree to the terms of the agreement, the agreement conforms to the requirements of R.C.M. 705, and the accused has freely and voluntarily entered into the agreement and waived constitutional rights. See Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2000); R.C.M. 705; R.C.M. 910(f), (h)(2), (h)(3); Perron, 58 M.J. at 82.

When an appellate issue concerns the meaning and effect of a pretrial agreement, interpretation of the agreement is a question of law, subject to review under a de novo standard. Lundy, 63 M.J. at 301. When an appellant contends that the government has not complied with a term of the agreement, the issue of noncompliance is a mixed question of fact and law. Id. The appellant bears the burden of establishing that the term is material and that the circumstances establish governmental noncompliance. Id. at 302. In the event of noncompliance with a material term, we consider whether the error is susceptible to remedy in the form of specific performance or in the form of alternative relief agreeable to the appellant. Id. at 305. If such a remedy does not cure the defect in a material term, the plea must be withdrawn and the findings and sentence set aside. See Perron, 58 M.J. at 85-86.

The present appeal, in its current posture, does not involve a pending, unresolved issue of mutual misunderstanding as to the terms of the agreement. See id. at 82-83. Assuming, without deciding, that the parties at Appellant's first court-martial may not have focused on whether the convening authority had exclusive power to order Appellant's assignment to Miramar, there was no misunderstanding as to the convening authority's power to request and obtain such an assignment, as reflected in the subsequent, although belated, transfer to Miramar. See

42

supra Part I.C.  The belated request, with its negative impact on Appellant's ability to participate in the rehabilitation program, as well as the failure to properly implement the reduction in rank, both reflected unilateral errors on the part of the Government with respect to its obligations under the pretrial agreement.  Moreover, the issue upon which the court below granted relief in Smead II -- the defective implementation of the reduction in rank -- involved a unilateral error acknowledged by the Government, not a mutual mistake.  See supra Part I.B.-C.  Accordingly, at this stage in the proceedings, Appellant's case does not involve a mutual misunderstanding by the parties, but rather a failure of one party -- the Government -- to fulfill its obligations under the pretrial agreement.

Before our Court, Appellant contends that the reinstatement of the charges withdrawn with prejudice under his first pretrial agreement, particularly the charge of rape, unfairly placed him in an adverse position in terms of evidentiary and sentencing considerations, compared to the situation that he would have faced if the charges had not been revived.  In Appellant's view: "These circumstances, which were caused by Government misconduct, prejudiced Appellant's substantial due process right to not be punished for a successful appeal, and forced him to enter into another pretrial agreement with the Government."  Appellant adds that he "is not alleging that he was coerced or

43

threatened into signing the pretrial agreement in the traditional sense." According to Appellant, "the circumstances forced upon him by the reinstitution of the charges and the military judge's ruling unfairly prejudiced his due process rights."

As a remedy, Appellant requests that we set aside the findings and sentence and return the case for further proceedings, with instruction that the charges dismissed with prejudice could not be reinstated, so that Appellant may "negotiate with the Government without the threat of a retaliatory rape conviction." Appellant contends that this would enable him "to freely and fairly negotiate with the Government and decide whether or not to give up his right to plead not guilty and accept a pretrial agreement."

The Government contends that the Court of Criminal Appeals correctly ruled that the charges could be revived after the court set aside the findings and sentence in Smead II. The Government further argues that even if the charges were not properly reinstated, the revival of the dismissed charges did not prejudice Appellant.

The Government's brief -- for the first time in this litigation -- also argues that the convening authority improperly agreed to dismiss the withdrawn charges with prejudice. According to the brief: "Nowhere is a convening

authority authorized to characterize such withdrawal as with or without prejudice, and any attempt to do so is a legal nullity."

B.  WITHDRAWAL AND DISMISSAL OF THE CHARGES WITH PREJUDICE

Under R.C.M. 705(a), "an accused and the convening authority may enter into a pretrial agreement in accordance with" the provisions of R.C.M. 705, "[s]ubject to such limitations as the Secretary concerned may prescribe . . . ." R.C.M. 705(b), entitled "Nature of agreement," provides that a pretrial agreement "may include" a variety of promises by the accused and the convening authority pertinent to the present appeal.  The phrase "may include" reflects that the President has not limited the nature of agreements under the Rule to the items listed in R.C.M. 705(b).  See 10 U.S.C. § 101(f) (2000) (rules of construction) (providing in paragraph (2) that "'may' is used in a permissive sense" and in paragraph (4) that "'includes' means 'includes but is not limited to'"); R.C.M. 103(20) (incorporating the definitions in 10 U.S.C. § 101 into the Rules for Courts-Martial).

Among the promises that may be made by an accused, the rule includes:  (1) a promise "to plead guilty to . . . one or more charges and specifications," and (2) a promise "to fulfill such additional terms or conditions which may be included in the agreement and which are not prohibited under this rule . . . ." R.C.M. 705(b)(1).

45

Among the promises that may be made by a convening authority, the rule includes: (1) a promise to "[w]ithdraw one or more charges or specifications from the court-martial"; (2) a promise to "[h]ave the trial counsel present no evidence as to one or more specifications or portions thereof"; and (3) a promise to "[t]ake specified action on the sentence adjudged by the court-martial." R.C.M. 705(b)(2)(C)-(E).

Under R.C.M. 705(c)(1) ("Prohibited terms or conditions"), a term or condition "shall not be enforced": (1) "if the accused did not freely and voluntarily agree to it"; and (2) "if it deprives the accused of . . . the right to due process" or certain other expressly enumerated rights not at issue in the present appeal. R.C.M. 705(c)(2) ("Permissible terms or conditions") adds that the prohibition on deprivation of certain rights in subsection (c)(1) does not preclude a voluntary agreement to: provide a stipulation of fact; testify in a subsequent proceeding; provide restitution; conform conduct to probation conditions through the period of any suspended sentence; or waive procedural requirements with respect to an investigation under Article 32, the composition of the court-martial, or the personal appearance of sentencing witnesses. The limitations of R.C.M. 705(c)(1) are the only express limitations on terms of pretrial agreements under the rule.

Other limitations may be provided under departmental regulations. See R.C.M. 705(a).

The pertinent departmental regulation does not contain a limitation relevant to the present appeal. See Dep't. of the Navy, Judge Advocate General Instr. 5800.7E, Manual of the Judge Advocate General (JAGMAN) para. 0137 (Jun. 20, 2007). Likewise, versions of the regulation in effect when the parties adopted each of the pretrial agreements in the present case contained no such limitation. See Dep't. of the Navy, Judge Advocate General Instr. 5800.7D, Manual of the Judge Advocate General (JAGMAN) para. 0137 (Mar. 22, 2004); Dep't. of the Navy, Judge Advocate General Instr. 5800.7C, Manual of the Judge Advocate General (JAGMAN) para. 0137 (Jul. 27, 1998).

The most recent version of the regulation sets forth a sample format for pretrial agreements that addresses withdrawal of charges, expressly recognizing the distinction between withdrawal with prejudice and withdrawal without prejudice:

> I understand and agree that, in return for my plea(s) of guilty, and following the military judge's acceptance of my plea(s) as set forth below, the Convening Authority will withdraw the language and/or charges and specifications to which I have pled not guilty. After announcement of the sentence by the military judge, the withdrawn language and/or charges and specifications will be dismissed by the Convening Authority with/without prejudice.

47

Dep't. of the Navy, Judge Advocate General Instr. 5800.7E, Manual of the Judge Advocate General (JAGMAN) App. A-1-h, ¶ 15 (Jun. 20, 2007).

In the present case, the parties entered into an agreement before the initial trial under which the convening authority agreed to withdraw and dismiss specified charges with prejudice upon announcement of the sentence. The Government now argues that the agreement at the initial trial to dismiss charges with prejudice was a "legal nullity" on the theory that a convening authority cannot enter into such an agreement.

The agreement before the initial trial and the agreement before the rehearing both provided for dismissal of certain charges with prejudice upon announcement of the sentence. In that regard, we note that the direct issue before us in the present appeal concerns the validity of the findings and sentence approved by the convening authority after the rehearing. The convening authority's action on the results of the rehearing was based on the second pretrial agreement -- an agreement that contained a requirement similar to the term in the initial pretrial agreement regarding dismissal of the withdrawn charges with prejudice.

At oral argument, counsel for the Government acknowledged that the Government's argument -- challenging the validity of the dismissal with prejudice provision in Appellant's first

48

pretrial agreement -- would also require us to invalidate the parallel provision in the second pretrial agreement. We note that the Government's view -- that an agreement to dismiss certain charges with prejudice term is a "legal nullity" -- would undermine a material term in the second plea agreement, the agreement that supports the findings and sentence before us in this appeal. As such, the Government's view would call into question the findings and sentence in the present case, and might well invalidate the findings and sentence in numerous other cases in which the parties have followed the model format in the Navy's regulations. See Perron, 58 M.J. at 85-86.

We reject the Government's belated and novel argument that the convening authority, acting on behalf of the Government, acted impermissibly in approving the pretrial agreement and dismissing the charges with prejudice. The Government's position is contrary to the example set forth in the Navy's own regulation, which provides a model pretrial agreement format that expressly recognizes withdrawal and dismissal with prejudice as a permissible term. See JAGMAN App. A-1-h, ¶ 15 (Jun. 20, 2007). Moreover, R.C.M. 705, which governs pretrial agreements, is not a rule of exclusion. As noted at the outset of this section, R.C.M. 705 provides broad authority as to the terms that the parties "may include" in an agreement. Dismissal

with prejudice as a term of a pretrial agreement does not come within the few express prohibitions in the rule.

Further, the power of a convening authority to dismiss withdrawn charges with prejudice is consistent with the powers granted to convening authorities by Congress and the President in the final disposition of charges.  For example, a convening authority may:  (1) direct action resulting in a finding of not guilty by entering into a pretrial agreement providing that the prosecution will present no evidence on a charge under R.C.M. 705(b)(2)(D); (2) grant transactional immunity under R.C.M. 704 that precludes trial by court-martial of an immunized offense; and (3) disapprove any finding by a court-martial and substitute either a lesser included offense or a finding of not guilty under Article 60(c)(3), UCMJ, 10 U.S.C. §860 (2000).  In the absence of limitations imposed by Congress or the President, we decline to restrict the power of the convening authority to dispose of withdrawn charges with prejudice as part of a pretrial agreement.

C.  REINSTATEMENT OF CHARGES AFTER WITHDRAWAL AND DISMISSAL WITH PREJUDICE PURSUANT TO THE PRETRIAL AGREEMENT

The nonbinding Discussion accompanying R.C.M. 705(b) provides the following guidance with respect to a pretrial agreement providing for withdrawal of charges:  "A convening authority may withdraw certain specifications and/or charges

from a court-martial and dismiss them if the accused fulfills the accused's promises in the agreement." The Discussion also provides that: (1) "such withdrawal . . . does not bar later reinstitution of the charges by the same or a different convening authority" except when jeopardy has attached; and (2) "A judicial determination that the accused breached the pretrial agreement is not required prior to reinstitution of withdrawn or dismissed specifications and/or charges." R.C.M. 705(b), Discussion.

The Discussion provides the following additional guidance for addressing a motion by the defense to dismiss reinstated charges: "If the defense moves to dismiss the reinstituted specifications and/or charges on the grounds that the government remains bound by the terms of the pretrial agreement, the government will be required to prove, by a preponderance of the evidence, that the accused has breached the terms of the pretrial agreement." Neither the rule nor the Discussion expressly addresses reinstatement of charges under an agreement to withdraw and dismiss the affected charges "with prejudice."

As a general matter, withdrawal of charges, by itself, does not preclude reinstatement of the withdrawn charges in a subsequent trial unless the withdrawal was for an improper reason. R.C.M. 604(b). See Cook, 12 M.J. at 453-54 (discussing

the predecessor version of the rule, para. 56, Manual for Courts-Martial, United States (1969 rev. ed.)).

In Cook, our Court addressed the circumstances under which charges withdrawn pursuant to a pretrial agreement could be reinstated in a subsequent trial. The opinion first concluded that former jeopardy prohibitions did not apply under the circumstances of the case. Cook, 12 M.J. at 452-53 (noting that the trial was before a military judge alone and that evidence had not been introduced on the charge).

Cook next considered whether the withdrawal of charges had been with prejudice. The opinion noted the practice in the federal district courts of permitting withdrawal of charges without prejudice to be reinstated when a guilty plea is overturned on appeal. Id. at 454. Cf. 18 U.S.C. § 3296 (2002) (current authority for reinstatement of charges). The opinion observed that the "record of trial [in Cook] does not indicate that withdrawal of the original larceny charge was to be with prejudice to any future prosecutorial efforts to rejuvenate it. Nor does withdrawal signify of itself that it was intended to be with prejudice to the later reinstitution of prosecution." Id. In that regard, the opinion noted that the military judge at the rehearing concluded that while the pretrial agreement did not expressly address further action on the charges, the "spirit of

that agreement" contemplated reinstatement.  Id. at 451.  The opinion concluded:

> In light of such practice [in the federal district courts] of withdrawing charges without prejudice and since we agree with the military judge's interpretation of the intent of the parties in entering the pretrial agreement, we conclude that withdrawal of the larceny charges at Cook's first trial in return for his guilty plea to concealment of the stolen goods did not, as a matter of law, preclude renewal of the prosecution on those charges after his plea of guilty had been set aside as improvident [on appeal] . . . .

Id. at 454.

Cook then turned to the question of whether reinstatement was otherwise prohibited.  The opinion observed that "an accused should not be prejudiced by his good faith performance of his plea bargain," as when a key witness available at the first trial is not available at the second trial.  Id. (citation omitted).  The opinion also noted that reinstitution of withdrawn charges would not be permitted when attributable to prosecutorial vindictiveness.  Id. at 454-55.  In Cook, neither factor was present.  Cook viewed the pretrial agreement as a routine bargain between an accused and a convening authority, in which each was entitled to receive an expected benefit.  Id. at 455.  When the plea was invalidated upon appeal, the government lost the benefit of the accused's plea of guilty to the larceny offense.  In that context, the accused was not entitled to the

windfall of escaping accountability for the charged offenses, a result that was not "contemplated by the parties when they entered into the pretrial agreement."  Id.

The present case involves the distinguishing circumstances expressly identified in Cook.  Here, the parties expressly stated in the pretrial agreement that the withdrawal of certain charges would result in dismissal with prejudice, and the record of trial is replete with references to withdrawal with prejudice.

The Court of Criminal Appeals in Smead III cited two reasons for not applying the distinction drawn in Cook between dismissals with and without prejudice.  Smead III, 2008 CCA LEXIS 6, at *14-*16, 2008 WL 142112, at *5.  First, the court stated without further explanation that it was "not convinced that the dicta from Chief Judge Everett in the 1982 Cook case is an accurate representation of the law in this area as it exists today."  2008 CCA LEXIS 6, at *15, 2008 WL 142112, at *5.  The court did not identify any contemporaneous source of law providing that when the parties agree to dismissal upon announcement of sentence, inclusion of the requirement to dismiss "with prejudice" has no bearing on whether the charges may be revived at a later time.  Id.

Second, the court distinguished Cook on the grounds that the plea in Cook was rejected on appeal because it was

"factually improvident," whereas the reversal in Smead II served to return "the parties to the status quo ante" as an "appropriate remedy" because "the Government failed (albeit in good faith) to deliver specific performance of that term (or an agreed upon or adequate alternative)." 2008 CCA LEXIS 6, at *15-*16, 2008 WL 142112, at *5. In the context of enforcement of a provision requiring dismissal with prejudice upon announcement of the sentence, the court did not explain why returning the parties to the status quo ante in a factually improvident plea case was different from doing so in a material breach case. See 2008 CCA LEXIS 6, at *14-*16, 2008 WL 142112, at *5.

The Government offers the following description of the lower court's analysis: "Because the parties did not agree on alternative relief, and there was no other way of curing the breach, the lower court properly nullified the pretrial agreement in accordance with this Court's case law." The lower court cited our decision in Perron in support of the proposition that its "earlier action of setting aside the findings and sentence in this case had the effect of returning both the Government and the Appellant to the status quo ante." 2008 CCA LEXIS 6, at *13, 2008 WL 142112, at *4 (citing Perron, 58 M.J. at 86). Our case law allows a reviewing court to cure a government breach of a pretrial agreement in several ways:

requiring specific performance of the initial pretrial agreement, providing the appellant with alternative relief, providing an adequate remedy to cure the breach, or allowing withdrawal of the pleas. Perron, 58 M.J. at 83-86. In Perron, we noted that if neither specific performance nor another adequate remedy is available, and "if the parties cannot agree on alternative relief . . . the result is to nullify the original pretrial agreement, returning the parties to the status quo ante." Perron, 58 M.J. at 86.

The record does not support either the Government's or the lower court's characterization of Smead II as returning the parties to the status quo ante under our case law. In Smead II, the court based its decision on the failure of the Government to comply with the pretrial agreement term involving the effective date of reduction in rank. See Smead II, No. NMCCA 200201020, slip op. at 1. The court in Smead II did not rely on, and the Government in the present appeal has not identified, anything in the record demonstrating that the Government after Smead I engaged Appellant in discussions on alternative relief. See id. Likewise, neither the court below nor the Government has demonstrated that there was "no other way of curing the breach," or that the court in Smead II provided the parties with the opportunity to consider permissible options under our case law. The Government's characterization overlooks the Government's own

56

request in Smead II that the court allow the Government to provide Appellant with the opportunity to consider specific performance or alternative relief.  The court in Smead II did not provide that opportunity, but instead remanded the case for a rehearing.  See id.

We note that R.C.M. 705(d)(4)(B) permits the convening authority to withdraw from a pretrial agreement "if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review."  This provision was not relied upon by the court below, and has not been cited by the Government in the present appeal.

The rule establishes a two-part test in which the decision of the appellate court must:  (1) set aside findings; and (2) do so because the plea was improvident.  Neither Smead I nor Smead II qualified as grounds for withdrawal from the pretrial agreement under the two-part test.  In Smead I, the court did not set aside the findings.  Smead I, 60 M.J. at 758.  In that posture, the court's action did not provide a basis for withdrawal from the pretrial agreement under the first part of the test under the rule.  Smead II, which set aside the findings, did not set forth a holding on the second part of the test -- improvidence of the plea.  Smead II, No. NMCCA 200201020.  In Smead II, the court did not rely on the providence ruling in Smead I regarding Miramar, but instead

57

focused on the court's separate ruling in Smead I regarding reduction in rank, which was not addressed as a providence issue in Smead I.  Id. (citing Perron, 58 M.J. at 86); Smead I, 60 M.J. at 757-58.  See supra Part I.B.-C.  The court in Smead II identified the failure to implement the reduction in rank as a material breach, citing Perron, but did not express a conclusion as to whether that rendered Appellant's plea improvident with respect to the reduction in rank.  Smead II, No. NMCCA 200201020 (citing Perron, 58 M.J. at 86).  In view of the Government's failure to implement the court's direction with respect to the remand in Smead I, and pursuant to the court's broad remedial authority under Article 66(c), UCMJ, 10 U.S.C. § 866 (2000), the court was not required to reach a conclusion on providence as the basis for setting aside the findings following the Government's noncompliance with its Smead I order.  In that regard, it is not surprising that neither the court below nor the Government in the present appeal relied on R.C.M. 705(d)(4)(B) as authority for the convening authority to withdraw from the pretrial agreement.  In light of Smead I, and in the absence of an express holding on providence in Smead II, we decline to read Smead II as a decision in which the findings were set aside "because a plea of guilty entered pursuant to the agreement is held improvident on appellate review."  R.C.M. 705(d)(4)(B).  We also note that although the parties included

in the initial pretrial agreement detailed provisions regarding
cancellation of the agreement and the relative rights of the
parties to withdraw from the agreement, the parties did not
include in the agreement a provision that would permit
reinstatement of the charges that had been dismissed with
prejudice upon announcement of the sentence.

Smead II, a somewhat cryptic decision, does not expressly
address the issue of providence of the plea, nor does it explain
why the court ordered a remand without giving the parties -- and
Appellant in particular -- an opportunity to consider and decide
whether to pursue specific performance, alternative relief, or
withdrawal of the pleas. See id. In that context, we decline
to treat Smead II as returning the parties to the position that
they occupied before entering into the pretrial agreement.

In the present case, the Government failed to implement the
pretrial agreement and compounded the problem by failing to
implement the direction of the court below on remand. The
Government did not negotiate an agreement that provided for
withdrawal from the pretrial agreement under the conditions of
the present case, nor did it ask the court below in Smead I or
Smead II to address the consequences of the convening
authority's decision to dismiss the charges with prejudice. The
Government, however, now wishes to benefit from its errors by
asking us to broadly interpret the agreement as authorizing the

59

convening authority to reinstate charges that were dismissed with prejudice. Under the unique circumstances of this case, we find that nothing in the applicable statutes, rules, or pretrial agreement required the court below to treat the agreement to dismiss charges with prejudice upon announcement of the sentence as a mere temporary disposition of the affected charges subject to revival at a rehearing. Accordingly, we conclude that the military judge at the rehearing, and the court below, erred in holding that the convening authority could revive at the rehearing the charges that had been dismissed with prejudice upon announcement of the sentence at Appellant's first court-martial.

    D.  VOLUNTARINESS OF APPELLANT'S PLEA AT THE REHEARING

    Although we find that the military judge, and the court below, erred in concluding that the charges dismissed with prejudice could be reinstated at the rehearing, we find that Appellant suffered no prejudice from this error. See Article 59(a), UCMJ, 10 U.S.C. § 859 (2000) ("A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.")

    First, Appellant was not prejudiced by the erroneous revival with respect to any impact on the rape charge and the other dismissed charges. As noted in Part II.B., we have

60

concluded that the convening authority properly dismissed those charges with prejudice at the rehearing.  As a result, the error in reviving the charges is harmless with respect to the dismissed charges.

The remaining question involves the effect of the revived charges on the voluntariness of Appellant's plea at the rehearing.  Appellant claims that reinstatement of the rape charge "tended to coerce the Appellant into a pretrial agreement beneficial to the Government."  "Where a plea is not knowing and voluntary, 'it has been obtained in violation of due process and is therefore void.'"  Perron, 58 M.J. at 81 (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)).  "The military judge shall not accept a plea of guilty without first . . . determining that the plea is voluntary . . . ."  R.C.M. 910(d).  We review a military judge's acceptance of a plea for abuse of discretion, and we apply "the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea."  United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008).

In Appellant's case, the record does not raise a substantial question regarding the voluntariness of Appellant's plea.  At the rehearing, the defense offered a variety of objections to reinstatement of the dismissed charges but did not

assert that revival of the charges would compromise Appellant's ability to make a voluntary decision with respect to pleas or a plea agreement. After the military judge ruled that the dismissed charges could be reinstated, the parties entered into a new pretrial agreement that again provided that Appellant would plead guilty to some charges and not guilty to others and that the convening authority would withdraw and dismiss with prejudice the charges to which Appellant pled not guilty. The parties agreed on a confinement reduction of thirty-six months, as compared to the corresponding term in the first pretrial agreement -- a reduction similar to the thirty-three months of confinement reduction requested by Appellant in the Smead II proceedings. Appellant's signed pretrial agreement provided that it was freely and voluntarily entered.

During the providence inquiry, Appellant told the military judge that he had voluntarily entered into the plea agreement. The record of trial contains no direct or indirect statement by Appellant or counsel that would demonstrate that Appellant was improperly coerced into making the agreement or pleading guilty by the revival of the previously dismissed charges or by any other circumstance of the rehearing. Likewise, in the post-trial proceedings before the convening authority, Appellant emphasized his admission of guilt and raised no issues

concerning the voluntariness of his pleas or the validity of the plea agreement.

Appellant now contends that the reinstatement of charges created a set of circumstances that forced him to enter into a pretrial agreement and plead guilty. Appellant has not provided a persuasive explanation for the inconsistency between his present litigation posture and his responses during the plea inquiry regarding the voluntariness of his pleas, his failure to raise these concerns at the rehearing, and the repeated references to his guilt in the post-trial submissions. Likewise, he offers no explanation as to why his pretrial agreement at the rehearing for a thirty-six month reduction in unsuspended confinement should be viewed as involuntary when he specifically requested a similar reduction of thirty-three months unsuspended confinement as a remedy during the Smead II proceedings. In his declaration, submitted one year and two months after his pleas at the rehearing, Appellant states that "[b]ut for the Government's obligation to withdraw and dismiss the rape charge, I do not believe I would have entered into this pretrial agreement." Whatever retrospective remorse Appellant may have felt about entering into a second pretrial agreement, that does not establish that his pleas were involuntary at the time of the rehearing in view of the circumstances of this case.

The record does not raise a substantial question regarding the voluntariness of Appellant's pleas, and Appellant has demonstrated no other prejudice to his substantial rights from the erroneous reinstatement of charges dismissed with prejudice at his rehearing. See Article 59(a), UCMJ. The rape charge and other charges to which Appellant pled not guilty were again withdrawn with prejudice at the rehearing, and Appellant's second pretrial agreement contained generally more favorable terms -- thirty-six months less confinement and an agreement to plead guilty to one less specification of child pornography possession -- than his original pretrial agreement.

## III.  CONCLUSION

For the foregoing reasons, the decision of the United States Navy-Marine Corps Court of Criminal Appeals affirming the approved findings and sentence is affirmed.

United States v. Smead, No. 08-0376/MC

RYAN, J., with whom ERDMANN, J., joins (concurring in the judgment):

I agree with the majority that the convening authority, acting on behalf of the Government, has the power to dismiss charges with prejudice. United States v. Smead, __ M.J. __ (50-51) (C.A.A.F. 2009). In the context of the pretrial agreement (PTA) from Appellant's first court-martial, the convening authority's promise to dismiss the charges with prejudice was a material term of a legally binding and enforceable contract between Appellant and the Government. Contrary to the Government's argument, it was not a "legal nullity" -- so long as the PTA remained in effect, the Government had no right to refile the charges "dismissed with prejudice" against Appellant. I write separately because I disagree that the United States Navy-Marine Corps Court of Criminal Appeals (CCA) erred when it held that its "'earlier action of setting aside the findings and the sentence in this case had the effect of returning both the Government and the Appellant to the status quo ante.'" Id. at __ (55) (quoting United States v. Smead (Smead III), No. NMCCA 200201020, 2008 CCA LEXIS 6, at *13, 2008 WL 142112, at *4 (N-M. Ct. Crim. App. Jan. 10, 2008) (unpublished)).[1]

_____

[1] Like the majority, I refer to the lower court's first opinion in this case as Smead I (United States v. Smead, 60 M.J. 755 (N-M. Ct. Crim. App. 2004), to its second opinion as Smead II

I.

Prior to Appellant's first court-martial, he entered into a PTA with the Government in which the Government agreed, <u>inter alia</u>: (1) to confine Appellant at the Marine Corps Air Station (MCAS) Miramar brig so that Appellant could complete a two-year sexual offender rehabilitation program; and (2) to defer automatic reduction of Appellant's pay grade. Memorandum of Pretrial Agreement at 5, 7-8, <u>United States v. Smead</u> (Sierra Judicial Circuit Dec. 7, 2001). Although Appellant was initially confined at the MCAS Miramar brig, he was transferred to the disciplinary barracks at Fort Leavenworth, Kansas, before he could begin the rehabilitation program, and the convening authority reduced Appellant to pay grade E-1 fourteen days after his court-martial.

Having been denied these benefits of his bargain, Appellant appealed to the CCA arguing that the denial rendered his guilty pleas improvident. Brief and Assignment of Errors at 6-8, <u>Smead I</u>, No. NMCCA 200201020 (Feb. 27, 2004). Regarding the confinement issue, the CCA agreed that the term in the PTA requiring the Government to confine Appellant at the MCAS Miramar brig was material and that the Government had failed to

_____

(<u>United States v. Smead</u>, No. NMCCA 200201020 (N-M. Ct. Crim. App. June 22, 2005) (per curiam) (unpublished)), and to its third opinion as <u>Smead III</u>.

2

comply with that term. Smead I, 60 M.J. at 757. In its opinion, the CCA noted that although Appellant was "transferred pursuant to regulations that overrode the [convening authority's] authority to direct the place of confinement," neither Appellant nor the Government appeared to be aware of or to understand those regulations at the time they entered into the PTA. Id. The CCA remanded the case to the convening authority for remedial action in the form of either: (1) specific performance of the Government's obligations under the PTA; (2) alternative relief to the satisfaction of Appellant; or (3) the opportunity for Appellant to withdraw his guilty pleas. Id. at 757-58. The CCA also accepted the Government's concession that the convening authority erred in regard to Appellant's pay and ordered the convening authority to rectify the error. Smead I, 60 M.J. at 758.

The record contains evidence that the Government attempted to comply with the CCA's order regarding confinement at the MCAS Miramar brig.[2] But efforts to provide specific performance with

---

[2] In December 2004, four months after the CCA's ruling in Smead I, the head of the Corrections Section, Headquarters, United States Marine Corps, requested that Appellant be transferred from the disciplinary barracks at Fort Leavenworth back to the MCAS Miramar brig and that he be enrolled in the next sex offender rehabilitation program. Appellant was so transferred in February 2005, but there is no evidence in the record that he was enrolled in, or was even eligible for, the rehabilitation program.

respect to that term of the PTA were rendered moot, vis-à-vis complying with the CCA's order, by the Government's simultaneous failure to address the pay issue.  In a brief filed eight months after the CCA's ruling in Smead I, the Government conceded that despite the CCA's order, the convening authority had failed to rectify its previous error with respect to Appellant's pay.  In light of the Government's failures, the CCA allowed Appellant to withdraw from his pleas, set aside the findings and the sentence, and remanded to a convening authority for a rehearing. Smead II, No. NMCCA 200201020 at 1.

## II.

The actions by the CCA are consistent with both the record of trial and the precedent of this Court.  In contrast, while the result the majority seeks to reach is clear, neither the holding of the majority opinion nor the reasoning underlying that result is remotely apparent.

In the event of a misunderstanding as to a material term in a pretrial agreement, this Court provides three possible remedies:  (1) specific performance of the agreement; (2) alternative relief to the satisfaction of the accused; or (3) an opportunity for the accused to withdraw from the plea.  United States v. Smith, 56 M.J. 271, 273 (C.A.A.F. 2002).  "[I]f the parties cannot agree on alternative relief, and specific performance is not available, the result is to nullify the

4

original pretrial agreement, returning the parties to the status quo ante." United States v. Perron, 58 M.J. 78, 87 (C.A.A.F. 2003).

In Smead I, Appellant argued that his guilty pleas were improvident because the Government had denied him the benefits for which he had bargained in the PTA. Brief and Assignment of Errors at 6-8, Smead I, No. NMCCA 200201020 (Feb. 27, 2004); see United States v. Mitchell, 50 M.J. 79, 82 (C.A.A.F. 1999) ("[I]f appellant did not receive the benefit of the bargained-for pretrial agreement, the pleas would be treated as improvident, the findings would be set aside, and he would be subject to retrial."). The CCA agreed, but because there had been "'a misunderstanding as to a material term in a pretrial agreement,'" the CCA remanded to the convening authority to provide the Government an opportunity to provide specific performance or alternative relief. Smead I, 60 M.J. at 756-57 (quoting Smith, 56 M.J. at 273).

The convening authority failed to provide either. By the time the CCA ruled again in Smead II, nine months after the CCA's ruling in Smead I and forty-two months after Appellant's court-martial, the Government had neither enrolled Appellant in MCAS Miramar's sexual offender program nor corrected the deficiency in Appellant's pay. Although the Government might have eventually corrected those errors, no evidence suggests

5

that the Government had specifically performed its obligations under the PTA by the time the case returned to the CCA. Likewise, there is no evidence that Appellant had legally accepted alternative relief.[3] See Smith, 56 M.J. at 279 (requiring the accused to make a knowing, voluntary, intelligent, and written waiver of his rights to contest the providence of his pleas prior to accepting alternative relief when there has been a mutual misunderstanding as to a material term of a PTA).

Because the Government had neither specifically performed nor provided Appellant with alternative relief, the CCA imposed the only remaining remedy: it permitted Appellant to withdraw his guilty pleas. The CCA's decision in Smead II set aside the findings and sentence and remanded the case for a rehearing, thereby nullifying the PTA and returning the parties to the status quo ante.[4] See Perron, 58 M.J. at 86 ("[I]f the parties

---

[3] The majority implies, without citation to any authority, that because there is no evidence in the record that the Government engaged Appellant in alternative relief discussions and because the Government failed to demonstrate that there was "no other way of curing the breach," the CCA did not have the authority to nullify the pretrial agreement. Smead, __ M.J. at __ (56-57). But neither an appellate court nor the convening authority may impose alternative relief on an unwilling appellant. Perron, 58 M.J. at 86, 86 n.8. This lack of evidence only supports the conclusion that the parties could not agree on alternative relief, which is all that Perron requires. Id. at 86.

[4] Despite acknowledging that in Smead I the CCA "agreed with Appellant's contention that his plea was improvident because the

cannot agree on alternative relief, and specific performance is not available, the result is to nullify the original pretrial agreement, returning the parties to the status quo ante.").  It follows, therefore, that the "dismissal of charges 'with prejudice' under the original pretrial agreement was rendered void ab initio by [the CCA's] decision in Smead I, leaving the Government free to re-refer all offenses originally alleged against the appellant."  Smead III, 2008 CCA LEXIS 6, at *14, 2008 WL 142112, at *4.  It is for that reason that we should affirm the decision of the lower court.

III.

I respectfully concur in the judgment.

---

Government breached a material term of the pretrial agreement," Smead, __ M.J. at __ (14), the majority declines "to read Smead II as a decision in which the findings were set aside 'because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.'" Id. at __ (58) (quoting R.C.M. 705(d)(4)(B)).  The majority offers no alternative theory of law -- contract or otherwise -- to support its conclusion that in Smead II the CCA allowed Appellant to withdraw his pleas without simultaneously releasing the Government from its obligations under the PTA.