UNITED STATES, Appellant,

v.

Robert E. COOK, Lance Corporal, U. S. Marine Corps, Appellee.

No. 39,434.

NCM 78 1424.

U. S. Court of Military Appeals.

March 22, 1982.

For Appellant: *Lieutenant Commander John C. Vinson, JAGC, USN* (argued); *Commander T. C. Watson, Jr., JAGC, USN, Lieutenant Anne L. MacArthur, JAGC, USN* (on brief).

For Appellee: *Lieutenant Commander Stephen C. Baker, JAGC, USN* (argued).

## Opinion of the Court

EVERETT, Chief Judge:

At a rehearing held in April and July, 1979, appellee was convicted by general court-martial, pursuant to his pleas, of three specifications of larceny, in contravention of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. His sentence was a bad-conduct discharge, confinement at hard labor for 12 months, forfeiture of $250 pay per month for 12 months, and reduction to the lowest enlisted grade. The convening authority approved these results which were consistent with the plea agreement then in effect. However, the United States Navy Court of Military Review set aside the findings as to one of the specifications and dismissed the charge concerned; the remaining findings were affirmed. The court below also set aside the sentence and ordered a rehearing on the sentence. *United States v. Cook*, 9 M.J. 763 (N.C.M.R.1980).

Thereafter, the Judge Advocate General of the Navy certified the following question to this Court (C.M.R. 9 M.J. 194):

WAS THE UNITED STATES NAVY COURT OF MILITARY REVIEW CORRECT IN HOLDING THAT CHARGES WITHDRAWN BY THE GOVERNMENT AT TRIAL PURSUANT TO A PRETRIAL AGREEMENT AFTER APPELLANT ENTERED PLEAS TO CERTAIN OTHER CHARGES COULD NOT BE REVIVED FOR A SUBSEQUENT TRIAL OCCASIONED BY THE REJECTION ON REVIEW OF THE PLEAS ENTERED AS IMPROVIDENT, <u>ABSENT</u> A PROVISION IN THE PRETRIAL AGREEMENT EXPRESSLY AUTHORIZING THE GOVERNMENT TO DO SO AS PART OF THE ORIGINAL BARGAIN?

I

As may be inferred from the wording of the certified question, this case has an unusual history. Appellee originally was tried by general court-martial on June 29, 1978. The charges and specifications referred to trial at that time included larceny of several items from a Marine Corps Exchange and unlawful concealment of many of the same items.[1] A pretrial agreement between appellee and the convening authority provided for suspension of any punitive discharge awarded and of any confinement in excess of 8 months, in exchange for Cook's guilty pleas to the concealment specification. The document expressly acknowledged appellee's intent to plead not guilty to the remaining charges but did not specify whether they would be prosecuted or withdrawn. Additionally, the following proviso was included in the agreement:

That it is expressly understood that the pretrial agreement will become null and void in the event: (1) I fail to plead guilty to each of the charges and specifications set forth below, (2) the court refuses to accept my plea of guilty to any of the charges and specifications set forth

---

1. Appellee also was charged with housebreaking of the exchange building and with false swearing, in violation of Articles 130 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 930 and 934, respectively.

below, (3) the court accepts each of my pleas but, prior to the time sentence is announced, I ask permission to withdraw any of my pleas, and the court permits me to do so, or (4) the court initially accepts my pleas of guilty to each of the charges and specifications set forth below but, prior to the time the sentence is adjudged, the court sets aside any of my guilty pleas and enters a plea of not guilty on my behalf.

At the beginning of the trial the appellee agreed to be tried by military judge alone. Thereafter, he entered pleas consistent with the pretrial agreement; during the military judge's inquiry into the providence of appellee's tendered plea of guilty, trial counsel informed the judge:

> There is an agreement upon acceptance of a provident guilty plea to the charge and specification to which there has been a guilty plea entered that if there is an acceptance of that plea, the convening authority will withdraw Charge I' and the specification thereunder, Charge II and the specification thereunder, and Specification 2 under Charge III.

Appellee expressed his concurrence that withdrawal of these remaining charges and specifications was "part of the agreement." After the judge completed his inquiry into the terms of the agreement, the trial counsel announced:

> In view of the military judge's acceptance of the accused's plea as provident, I have been authorized and directed by the convening authority to withdraw Charge I and the specification thereunder, Charge II and the specification thereunder, and Specification 2 under Charge III.

Thereupon, the military judge announced his findings of guilty of the concealment specification, nothing further being said about the remaining alleged offenses.

The military judge sentenced appellee to a bad-conduct discharge, confinement at hard labor for 8 months, forfeiture of $200 pay per month for 8 months, and reduction to the lowest enlisted grade. In conformance with his obligation under the pretrial agreement, the convening authority suspended the punitive discharge; additionally, the convening authority suspended the period of confinement and forfeitures in excess of 5 months.

In its review of the conviction, the Court of Military Review ruled, however, that the plea of guilty to the concealment charge was improvident. 7 M.J. 623 (N.C.M.R. 1979). The court pointed out that appellee's responses during the providence inquiry indicated that he had participated in the larceny from the exchange along with a confederate and that he was uncertain whether the items he was charged with concealing were the same items *he* had stolen or were those which his *companion* had stolen. Reasoning that under military law one cannot be found guilty of receiving or concealing property which he himself has stolen,[2] the Court of Military Review concluded that it had no choice but to reverse the conviction and to return the record for a rehearing.

■ When the rehearing commenced on April 18, 1979, appellee faced two new specifications of larceny from a Public Affairs Office and two new specifications of concealing the property stolen from that office, as well as *all* of the original charges and specifications.[3] Noting that all but one of the charges first referred for trial had been withdrawn by the Government at the original hearing pursuant to a pretrial agreement, the military judge queried counsel about the court's power to rehear those charges. The judge speculated whether "the withdrawing of those other charges under the circumstances [was] tantamount

---

**2.** At trial the military judge raised a question in this same regard. However, Cook's individual defense counsel persuaded the judge that under a recent precedent, *United States v. Bracken*, 558 F.2d 544 (9th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977), a plea of guilty could be accepted to concealment of

the stolen goods, even if the accused had been the thief. We need not decide this issue.

**3.** The charges which had originally been referred for trial now were denominated "Additional Charges."

to a finding of not guilty," which would preclude a rehearing. The individual defense counsel seemed to acknowledge that the pretrial agreement had been met by both parties—appellee's guilty plea had been accepted and the other charges had been withdrawn, just as the agreement prescribed. However, counsel referred to the following language of paragraph 92a, Manual for Courts-Martial, United States, 1969 (Revised edition): "A rehearing may not be ordered in a case in which there is a lack of evidence in the record to support a finding of guilty of the offense charged." The defense contended that, as the charges of larceny from the Marine Exchange had been withdrawn at the first hearing, there was, of course, "a lack of evidence in the record to support a finding of guilty of" those offenses. Accordingly, he argued that the charges originally dismissed were improperly before the court at the rehearing.[4] Thereupon, the military judge ruled:

I notice that the pretrial agreement in the previous court did not provide for the contingency of what would happen in the event that the appellate court busted the plea. It does provide for everything up to that point. And the only case that I am aware of is a case involving a situation where a plea was found improvident at the appellate level, and there was a specific provision in the pretrial agreement relating to it. However, I believe that in view of the agreements of the parties at the previous trial, that it was a contingent plea and that the other charges would be withdrawn contingent upon the providency of the plea, I believe at least the spirit of that agreement would be determinative; and that in the event that this plea were ever broken or found improvident through the appellate

process, that the withdrawn charges could thereby be reinstated. However, the pretrial agreement could have been made more clear in that particular area. But I believe that is the only fair interpretation that I can put on that agreement. Now, had that pretrial agreement not mentioned this contingency and had the parties not filled in that contingency during the trial and the government would have been able to proceed had they wanted to on those other charges and chose not to, my decision would have been different. But it appears to me that there was a contingency agreement that all parties agreed to, and that agreement would be that the plea would remain provident. And I believe the spirit of that agreement would permit the convening authority to reinstate those withdrawn charges and refer them to this trial. So basically I am—although there is not a motion before the court, I raised it myself—I am going to permit all three specifications to be reheard at this trial.

Appellee pleaded guilty to the two new larceny specifications, which concerned the Public Affairs Office, and to the original larceny specification; all other charges were withdrawn by the trial counsel after appellee entered pleas of not guilty to them. After rendering findings consistent with appellee's pleas, the military judge imposed the sentence indicated at the outset of this opinion. The convening authority approved these results.

When the case came before the Court of Military Review a second time, appellate defense counsel assigned two errors; one challenged the legality of that portion of the second sentence which was in excess of the sentence approved after the first trial; the other addressed the propriety of trying

---

4. While appellate defense counsel did not pursue this theory on appeal, we have concluded that it does not apply to the situation presented by this case. The sentence in paragraph 92a which immediately precedes the one quoted by individual defense counsel reads: "If the convening authority disapproves the findings of guilty and the sentence of a court-martial he may, except when there is lack of sufficient evidence in the record to support the findings,

order a rehearing, in which case he shall state the reasons for disapproval (Art. 63(a))." In context, then, the second sentence simply amplifies the restriction in the first sentence and clearly addresses cases where there were findings announced at the original proceeding after presentation of evidence and those charges were then disapproved by the convening authority.

appellee at the rehearing on new charges which had not been the subject of the original trial. In due course, appellate government counsel responded to these issues. At the end of their brief, government counsel also noted: "There is one matter which was not raised by the appellant which affects the sentence in this case: the propriety of trying the appellant on the charges and specifications that were withdrawn at the first trial." While acknowledging that "[i]t could be argued that the withdrawal of those charges and specifications was with prejudice and was tantamount to findings of not guilty," government counsel urged that

it was proper to retry the appellant on *all* of the Charges from the first court-martial. While the pretrial agreement on that trial did not contemplate a reversal at the appellate level, the Government submits that the military judge's interpretation of that agreement during the second trial is the proper approach. (R. 14). The withdrawal of charges and specifications was contingent upon a *provident* plea. Such a plea no longer exists and, accordingly, the withdrawals are ineffective.

The Court of Military Review disagreed. It reasoned that, unless appellee "was protected from retrial on . . . [the withdrawn] charges, the withdrawal . . . [provision] of the plea bargain would have been of no value to" Cook. Moreover, in the view of the court below, "[i]f further prosecution" on those charges "was contemplated by the convening authority," the agreement "should have . . . spelled [this] out." Absent any indication in the record that such a result was foreseen by the parties, the court declined to read such a condition into the agreement. Instead, the Court of Military Review concluded that the "understanding reflected on the record" concerning the withdrawal must be interpreted "in a light most favorable to" appellee. *United States v. Cook, supra* 9 M.J. at 764.

**II**

We begin by observing that no provision in the pretrial agreement expressly addressed what would happen if appellee's accepted pleas of guilty were found improvident on appeal. Four events were specified by the agreement which would render it null and void: (1) failure of appellee to plead guilty to the indicated charge and specification; (2) refusal of the court to accept the tendered pleas of guilty; (3) withdrawal of the plea before sentence was announced; and (4) setting aside of the pleas by the court. Obviously, all of these concerns are limited to the trial setting; none involves the appellate stage.

Equally obvious is the fact that, as individual defense counsel at the rehearing pointed out, the literal terms of the pretrial agreement have been carried out by each of the parties: Appellee entered pleas of guilty which the trial judge accepted and which served as the basis of the conviction; the convening authority, through the trial counsel, withdrew the remaining charges and specifications and, in his action upon review, suspended the punitive discharge.

Accordingly, the questions posed to this Court are whether the Government is barred as a matter of law from revitalizing the charges initially withdrawn here and, even if not, whether the Government is precluded from doing so as a matter of fairness under the circumstances of this case.

**A**

■ The Fifth Amendment safeguard against double jeopardy[5] is mirrored in Article 44(a) of the Uniform Code of Military Justice, 10 U.S.C. § 844(a), which prescribes: "No person may, without his consent, be tried a second time for the same offense." However, the definition of trial in Article 44(c)—which views the "introduc-

---

**5.** The Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States provides: "[N]or shall any person be

subject for the same offence to be twice put in jeopardy of life or limb."

tion of evidence" as the critical event[6] —does not conform precisely to the Supreme Court's decisions that jeopardy attaches in a jury trial when the jury is sworn, even though no evidence has been presented. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).[7] *See also* Weise, *Double Jeopardy: Changes by the Supreme Court and Their Effect on the Military*, 11 The Advocate 28 (Jan.-Feb. 1979). In the case at bar, appellee elected to be tried by military judge alone, and no evidence had been introduced. Thus, he falls outside the purview of either the Fifth Amendment or Article 44(a).

In the federal district courts, until jeopardy has attached, the Government is permitted by leave of court to "file a dismissal of an indictment, information or complaint,"[8] which, while it terminates the prosecution, may not necessarily bar further prosecution for the same offense in a new proceeding. Indeed, unless it is specified otherwise, a "dismissal" at that stage generally "is without prejudice to" such later efforts by the Government. *United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2nd Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1559, 43 L.Ed.2d 775 (1975); *United States v. De-Marrias*, 487 F.2d 19, 21 (8th Cir. 1973), *cert. denied*, 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974); *United States v. Davis*, 487 F.2d 112, 118 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974); *United States v. Chase*, 372 F.2d 453, 463–64 (4th Cir.), *cert. denied*, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967).

Paragraph 56a, Manual, *supra*, places the authority to withdraw a specification in the convening authority; and no leave of court

is required. However, the same provision directs: "In no event will a specification or case be withdrawn arbitrarily or unfairly to the accused." And it adds in subsection *b* (emphasis added):

*Normally, less than all of the specifications may not be withdrawn after the trial proceedings have begun except* upon a determination of the convening authority that the specifications so withdrawn should be dismissed or *for other good cause determined by the convening authority and made a matter of record.* Among the proper grounds upon which a particular specification may be withdrawn are that the specification contains a fatal defect, that the evidence in support thereof is insufficient, or that one of the accused is to be used as a witness.

The effect of withdrawal is described by paragraph 56c in this manner (emphasis added):

*The withdrawal of a specification on proper grounds before the commencement of the trial in a case is not in itself a ground of objection or a defense in a subsequent trial for the same offense* .... Although a specification should not be withdrawn after commencement of the trial without a showing of good cause in the record unless it is to be dismissed, a showing of good cause is especially important after the introduction of evidence bearing on the guilt or innocence of the accused as to the alleged offense, as withdrawal at this stage may bar future prosecution for that offense. *See* Article 44. *Accordingly, if further prosecution is intended, the power to withdraw a specification or a case after commencement of the trial should be exercised only* because of urgent and un-

---

**6.** Article 44(c), Uniform Code of Military Justice, 10 U.S.C. § 844(c), states: "A proceeding which, after the introduction of evidence but before a finding, is dismissed or terminated by the convening authority or on motion of the prosecution for failure of available evidence or witnesses without any fault of the accused is a trial in the sense of this article."

**7.** However in a bench "trial, jeopardy attaches [only] when the court begins to hear evidence."

*Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).

**8.** Fed.R.Crim.P. 48(a) provides: "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

foreseen military necessity or *for other good cause in the interest of justice.*

■ From these provisions it is apparent that, just as in federal district court, the withdrawal of a charge on proper grounds before the commencement of trial does not preclude a later attempt by the Government to reinstitute prosecution on that charge. However, just as Fed.R.Crim.P. 48(a) requires that the Government secure leave of court to withdraw or dismiss an indictment to protect a defendant against arbitrariness and unfair treatment, the Manual's insistence that "good cause" for withdrawing a specification be "made a matter of record" safeguards the military accused.

■ In the case at hand, the reason for the convening authority's withdrawal of the larceny charge against Cook is made clear in the record: It was a bargained *quid pro quo* in return for appellee's plea of guilty to the concealment charge. Since judicial approval—if not applause—has been accorded the plea-bargaining process, *cf. Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), we can hardly deny that withdrawal of the specification pursuant to a pretrial agreement is for a "good cause," as required by paragraph 56*a* and *c*. Certainly an accused who, by proposing a pretrial agreement, induced the withdrawal of charges is poorly situated to contend that it was not for good cause.

■ The record of trial does not indicate that withdrawal of the original larceny charge was to be with prejudice to any future prosecutorial efforts to rejuvenate it. Nor does withdrawal signify of itself that it was intended to be with prejudice to the later reinstitution of prosecution. Indeed, withdrawal without prejudice of some counts of an indictment in return for guilty

pleas to one or more remaining counts is not uncommon in the federal district courts. *See e.g., United States v. Smith,* 584 F.2d 759 (6th Cir. 1978)[9]; *United States v. German,* 355 F.Supp. 679 (D.P.R.1972). Thereby, the Government is left free to proceed later against the defendant on the withdrawn charges if he succeeds in an appellate effort to have his pleas of guilty overturned. *United States v. German, supra.*[10] In light of such practice of withdrawing charges without prejudice and since we agree with the military judge's interpretation of the intent of the parties in entering the pretrial agreement, we conclude that withdrawal of the larceny charges at Cook's first trial in return for his guilty plea to concealment of the stolen goods did not, as a matter of law, preclude renewal of the prosecution on those charges after his plea of guilty had been set aside as improvident by the Court of Military Review.

B

■ Even though no absolute bar exists to further prosecution of appellee on the larceny charge withdrawn at the first trial, the circumstances here must be scrutinized carefully to ensure that such prosecution was not basically unfair to appellee. *Cf. United States v. Kazena,* 11 M.J. 28, 35 (C.M.A.1981) (Everett, C. J., concurring in the result). Thus, if witnesses whom Cook would have called at his first trial to testify as to his innocence of that larceny charge had become unavailable, this circumstance would argue against allowing resuscitation of that charge, for an accused should not be prejudiced by his good faith performance of a plea bargain. *United States v. Carter,* 454 F.2d 426 (4th Cir. 1972). Likewise, reinstitution of prosecution will not be per-

---

9. After the Sixth Circuit rejected the defendant's contentions on direct appeal, 633 F.2d 218; he sought unsuccessfully to raise them again under 28 U.S.C. § 2255 ultimately certiorari was denied by the Supreme Court. *See* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981).

10. Dismissing an indictment without prejudice and later reindicting for the same offense is permissible when the purpose is to await the outcome of appellate litigation. *Cf. United States v. Evers,* 552 F.2d 1119 (5th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 407, 54 L.Ed.2d 284 (1977).

mitted when such a procedure is attributable to prosecutorial vindictiveness because of a successful appeal or is intended to harass an accused. *Cf. Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); 8B *Moore's Federal Practice*, para. 48.02, p. 48–10, citing *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *but cf. Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Indeed, dismissal of the subsequent prosecution "is the only appropriate sanction to protect a defendant from the practice of 'charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.' *United States v. Ammidown*, [497 F.2d 615 (D.C.Cir.1973) ]." *United States v. Fields*, 475 F.Supp. 903, 907 (D.D.C.1979).

▮ However, nothing of this sort is present here. The underlying theme of the pretrial agreement was that Cook, in return for pleading guilty to concealment of stolen goods, would benefit by withdrawal of the larceny charge [11] and the convening authority, in return for withdrawing the larceny charge, would benefit by conserving prosecutorial resources which otherwise would be spent in a costly and time-consuming contested trial. If, however, appellee can successfully attack the providence of his guilty pleas,[12] escape the conviction based on those pleas, yet bar the convening authority from resurrecting the withdrawn charges, "the convening authority has, in a sense, not received the expected benefit of his bar-

gain." *United States v. Mills*, 12 M.J. 1, 3 (C.M.A.1981).

Cook is entitled to his bargain, but not to a windfall; in the case at bar the reinstitution of the larceny charge must be ascribed only to the convening authority's proper desire to avoid conferring such a windfall upon appellee. Unless the convening authority can reinstitute the charge of larceny from the Marine Exchange, then, because of the Court of Military Review's ruling as to the improvidence of his guilty plea, Cook will completely escape accountability for either larceny or concealment. Yet, he was guilty of at least one of those crimes, according to his own judicial confession at the first trial. Justice would not be served by such an outcome, nor could such a result have been contemplated by the parties when they entered into the pretrial agreement.

### III

At his second trial Cook was charged not only with offenses involving the theft from the Marine Exchange but also those arising out of his earlier larceny from the Public Affairs Office, which had come to light much later. This addition of charges in connection with a rehearing does not seem inconsistent with the literal wording of Article 63(b) of the Code, 10 U.S.C. § 863(b), which prescribes that "no sentence in excess of or more severe than the original sentence may be imposed, *unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, or unless the sentence prescribed for the offense is mandatory.*"

---

11. Contrary to the position of the court below that if the withdrawal did not absolutely bar subsequent prosecution, the agreement would have been of little value to the appellee, it should be apparent that in the usual case, where the plea is sustained on review and reinstitution of the withdrawn charges would not be permitted, an accused will realize a significant benefit. In the unusual case, where the accused succeeds on appeal in getting his guilty plea vacated, we see no reason to strain the spirit of an agreement to benefit one party, when that party has caused the other to lose its benefit of the bargain.

12. Unlike the civilian courts, in military justice the attack on the providence of a guilty plea will frequently be attributable to the automatic review provided under Article 66, UCMJ, 10 U.S.C. § 866, rather than to any efforts or suggestions by the accused himself. However, in the present context, this difference is not significant.

(Emphasis added). *See also* paras. 81*d* and 92*a*, Manual, *supra.* Moreover, the record of trial does not even remotely suggest the existence of any prosecutorial vindictiveness, which might bar the convening authority from referring additional charges to trial. *Blackledge v. Perry, supra.*

Article 63(b) would preclude the imposition of a harsher sentence at a rehearing,[13] even if the sentencing authority states reasons "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *North Carolina v. Pearce, supra*, 395 U.S. at 726, 89 S.Ct. at 2081. In another respect, it may be less protective, for, if additional charges are preferred, then Article 63(b) might be interpreted to lift any ceiling that otherwise would result from the original sentence imposed—even though as here, the additional charges concerned an accused's conduct before "the time of the original sentencing proceeding." However, any constitutional defect of Article 63(b) in this regard is corrected to some extent by the Manual's provisions for computing the maximum sentence imposable at a rehearing. *See* paragraph 81*d*.[14]

■ Of course, the case at bar poses no hazard that the judge exceeded any constitutional or statutory limitation on the sentence imposable at the rehearing. For one thing, the charge to which Cook pleaded guilty at the first trial was withdrawn by the Government after he entered guilty pleas to other charges at the rehearing. Thus, it was impossible for appellee to receive a greater sentence at the rehearing on the charge for which he had been sentenced at the first trial, since at the rehearing he was not found guilty or resentenced on *that* original charge. Furthermore, in computing the maximum sentence that could be adjudged at the rehearing, the military judge ruled that the maximum sentence imposable with respect to the larceny charges which had been withdrawn at the first trial and then revived was the sentence which the convening authority had approved for the concealment charge to which Cook pleaded guilty at the first trial. Thus, in the military judge's computation of the maximum sentence imposable at the rehearing, the appellee received every benefit required by the Double Jeopardy Clause, Article 63(b), and paragraph 81*d* of the Manual—and probably more. Finally, upon comparing the sentence adjudged at the retrial on the charges to which Cook then pleaded guilty with the maximum sentence which the military judge could have imposed for those offenses—as well as with the sentence approved by the convening authority after the first trial—we are convinced that appellee suffered no prejudice as to sentence by the convening authority's joinder of additional charges for the rehearing.

---

**13.** Article 63(b), UCMJ, 10 U.S.C. § 863(b), only precludes imposition of a sentence more severe than the original sentence which was "imposed." Even if this term is equated with "adjudged," paragraph 81*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), establishes the sentence approved by the convening authority as a ceiling at the rehearing.

**14.** Since courts-martial adjudge a unitary sentence, it is possible that, when an accused is convicted of additional charges at a rehearing and is resentenced, the portion of the unitary sentence which the resentencing authority deems attributable to the charge on which the accused was retried will exceed the sentence adjudged for that same offense at the first trial. However, if court members adjudge the sentence at the rehearing, no constitutional issue arises, for *Pearce* does not apply to resentencing by a jury which has not been informed of the earlier sentence. *See Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). When a military judge adjudges the sentence at the rehearing, if in his sentence calculations he imposes a greater punishment with respect to the original charge because of the accused's conviction on additional charges for offenses which occurred before "the time of the original sentencing proceeding," he might be running afoul of the limitation imposed by *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969). Since a unitary sentence is adjudged and it is limited by paragraph 81*d* of the Manual, this constitutional violation by a judge probably will not be readily discernible.

For these reasons, appellee is not entitled to the relief granted by the court below and the certified question is answered in the negative.

IV

The decision of the United States Navy Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Navy for submission to that court for further proceedings pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Judges COOK and FLETCHER concur.