# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**

v.

**Specialist ETHAN H. KIBLER**
**United States Army, Appellant**

ARMY 20220245

Headquarters, Seventh Army Training Command
Thomas P. Hynes, Military Judge
Lieutenant Colonel Jeremy W. Steward, Staff Judge Advocate

For Appellant: Major Bryan A. Osterhage, JA; Captain Andrew W. Britt, JA.

For Appellee: Lieutenant Colonel Jacqueline J. DeGaine, JA.

29 March 2024

------------------------------------------------------------------

OPINION OF THE COURT ON RECONSIDERATION

------------------------------------------------------------------

HAYES, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of domestic violence, one specification of destruction of non-military property, one specification of violation of a lawful order, and one specification of absence without leave, in violation of Articles 128b, 109, 92, and 86, Uniform Code of Military Justice,10 U.S.C. §§ 928b, 909, 892, and 886 [UCMJ].

The military judge sentenced appellant to a bad conduct discharge and a total of 290 days confinement. The incarceration portion of the sentence included the following: (1) 290 days for the domestic violence by suffocation specification; (2) 182 days for the domestic violence by strangulation specification; (3) 30 days for the absence without leave specification; (4) 15 days for the violation of a lawful order specification; and (5) zero days for the destruction of non-military property specification, with all sentences to run concurrently. The convening authority took no action on the findings and sentence.

------------------------------------------------

[1] Judge ARGUELLES decided this case while on active duty.

On 31 October 2023, a panel of this court issued a memorandum opinion and remand order in this case. *United States v. Kibler*, ARMY 20220245 2023 CCA LEXIS 468* (Army Ct. Crim. App. 31 Oct. 2023) (Mem. Op.) On 29 November 2023, appellant moved the court to reconsider *en banc*. On 12 December 2023, the court granted appellant's motion to reconsider *en banc*.

This case is now before the court *en banc* for review pursuant to Article 66, UCMJ. Appellant personally raised two matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), one of which (legal sufficiency of the domestic violence by suffocation specification) warrants discussion and relief.[2]

## BACKGROUND

While stationed in Germany appellant married an Iranian national. Because she only possessed an Iranian passport, appellant encountered problems getting her into the Army DEERS system and onto post, which caused friction in the relationship and ultimately led to the charges in this case.

## LAW AND DISCUSSION

### A. Legal Sufficiency of Specification 2 of Charge V

Appellant asserts that his conviction for domestic violence by suffocation is not legally sufficient. As explained below, we agree and find the military judge failed to resolve the significant inconsistencies between the specification as pled and the facts appellant admitted.

### 1. Additional Facts

Included within the National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, 132 Stat. 1636 (13 Aug 2018) (2019 NDAA) was a new offense, Article 128b Domestic Violence, which provided as follows:

> Any person who—
> (1) commits a violent offense against a spouse, an intimate partner, or an immediate family member of that person;
> (2) with intent to threaten or intimidate a spouse, an intimate partner, or an immediate family member of that person—
> (A) commits an offense under this chapter [10 USCS §§ 801 et seq.] against any person; or

---

[2] We have also given full and fair consideration to the other matter personally raised by appellant pursuant to *Grostefon*, and find it to be without merit.

(B) commits an offense under this chapter [10 USCS §§ 801 et seq.] against any property, including an animal;

(3) with intent to threaten or intimidate a spouse, an intimate partner, or an immediate family member of that person, violates a protection order;

(4) with intent to commit a violent offense against a spouse, an intimate partner, or an immediate family member of that person, violates a protection order; or

(5) assaults a spouse, an intimate partner, or an immediate family member of that person by strangling or suffocating;

shall be punished as a court-martial may direct.

2019 NDAA, § 532(a).

As originally charged, Charge V contained three specifications for Article 128b domestic violence. At issue is Specification 2, which, as described in greater detail below, the military judge construed as constituting a violation of Article 128b(5), domestic violence by suffocation. In January 2022, the President issued Executive Order 14062, which defined the term "suffocation" as used in Article 128 and Article 128b as follows: "Intentionally, knowingly, or recklessly impeding the normal breathing of a person by covering the mouth of the person, the nose of the person, or both, regardless of whether that conduct results in any visible injury or whether there is any intent to kill or protractedly injure the victim." Exec. Order No. 14062, 87 Fed. Reg. 4763, 4772 (Jan. 31, 2022).

Specification 1 (which is not at issue here) clearly charged that appellant assaulted his spouse by strangling her, with his hands around her neck, impeding her normal breathing. As originally charged, Specification 2 alleged that appellant did "assault . . . his spouse by placing a pillow over her face, and did thereby inflict substantial bodily harm upon her, to wit: impeding her normal breathing." Given that Specification 2 did not explicitly allege, or even contain the word, "suffocate," it was not clear from the outset if the government was alleging that appellant committed a violation of Article 128b(1) (violent offense against his spouse that resulted in her not being able to breathe normally), or a violation of Article 128b(5) (suffocation).

As part of his plea, appellant agreed to plead guilty to Specification 2 as amended, which alleged that he did "assault . . . his spouse by placing a pillow over her *chest and neck,* and did thereby inflict substantial bodily harm upon her, to wit: impeding her breathing." Given the parties' agreement to delete the word "face" in the amended specification, combined with the fact that the legal definition of "suffocation" requires a covering of the nose or mouth, it appears that the intent of the amendment was to clarify that the altered specification alleged domestic violence

under a violent offense theory. In the section of the Stipulation of Fact specifically discussing Specification 2, appellant agreed that he did "assault [his spouse] by placing a pillow over her chest and neck and hitting her through it," and "that when the pillow was put over his spouse's chest and neck and he hit her through it, he did bodily harm to her, and that he did so with unlawful force." Similarly, earlier in the Stipulation of Fact appellant again admitted that he hit his spouse through the pillow so as not to leave any bruising (which would again appear to support a violent offense theory), but then added that his weight was on her chest and he "has no doubt that her breathing would be impaired."

The military judge never clarified on the record whether the government was proceeding under a theory of domestic violence by violent offense or by suffocation, but rather provided appellant with the elements of the suffocation offense during the Specification 2 colloquy.[3] When asked to explain why he was guilty of this specification, appellant first described how he held the pillow against his wife's body and hit her through the pillow, and then stated "[m]y action of holding the pillow on her chest while punching her through the pillow inflicted substantial bodily harm to her by making it difficult for her to breathe." After he again explained how he punched his wife through a pillow, in response to further questioning, appellant for the first time stated that the pillow "was above her face and chest."

The military judge did not follow up or attempt to resolve: (1) the discrepancy between the fact that he instructed on a theory of suffocation and appellant for the most part appeared to be admitting to "violent offense" conduct; and (2) the fact that appellant was now admitting to conduct which was beyond the scope of the amended specification, and indeed to which the parties had previously agreed to expunge from the specification as originally charged. To the contrary, the military judge instead asked appellant if his wife gave "any indication that she wanted you to put your *hand around her neck* or to put a pillow over her face and neck," to which appellant responded "Now [sic], your honor." (emphasis added). As there was nothing in the Stipulation about this specification involving appellant putting his hand on his

---

[3] At one point early in the proceedings, the military judge referenced an off the record discussion held under Rule for Courts-Martial 802, noting that "[w]e also discussed some issues in the stipulation of fact related to how the Article 128b offenses were charged, which did not have model specifications for them at the time. We discussed in a couple of instances which facts in this stipulation were for charged offenses and which facts were facts in aggravation, which I will explore with [appellant]." Based on this record, we do not know if any of these discussions included a clarification of whether Specification 2 of Charge V alleged domestic violence under a violent offense or suffocation theory, nor do we know if there was any discussion as to how the amended specification precluded appellant's ability to plead guilty to Article 128b(5) domestic violence by suffocation.

4

wife's throat, it appears at this point both the military judge and appellant were confusing Specification 2 and Specification 1, the latter of which did allege strangulation.

When subsequently asked how he knew he was suffocating his wife, appellant again stated that the pillow was "over her face and her chest." He added that "it was over her chest and neck, your honor, and her face." Appellant then stated that he believed he was suffocating his wife because the pillow was "blocking central airway." Again, the military judge made no effort to clarify the discrepancy between the amended specification and appellant's statements. Nor did he ask appellant why he pleaded to an amended specification which specifically deleted the allegation that he held the pillow over his wife's face, yet then expressly admitted to such conduct during the providence inquiry.

### 2. *Analysis*

We review a military judge's acceptance of a guilty plea for an abuse of discretion, and questions of law arising from the guilty plea de novo. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). The military judge is responsible for determining whether there is an adequate basis in law and fact to support a guilty plea. *Inabinette*, 66 M.J. at 322 (citation omitted). It is not sufficient to merely obtain the accused's consent to the elements as defined, rather, the military judge must question the accused "about what he did or did not do, and what he intended" to establish the providence of his plea. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 253 (1969). A military judge abuses his discretion where he fails to obtain an adequate factual basis to support the plea. *Inabinette*, 66 M.J. at 322.

In reviewing a military judge's acceptance of a plea, we apply a substantial basis test: "Does the record as a whole show 'a substantial basis' in law and fact for questioning the guilty plea." *Id.* (citations omitted). Put another way, once the military judge accepts the plea and enters a finding, "an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence of record," to include the stipulation of fact. *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996). In *Garcia*, the Court of Appeals for the Armed Forces (CAAF) explained that if an accused "'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge *must either resolve the apparent inconsistency or reject the plea.*" *Id. (citing Article 45(a), UCMJ)* (emphasis added); *see also United States v. Morris*, 58 M.J. 739, 743 (Army Ct. Crim. App. 2003) (finding no error where "the three most critical requirements for a provident plea were satisfied[:]" Appellant admitted the facts necessary to establish the charges, he expressed a belief in his own guilt, and *there were no inconsistencies between the facts and pleas.*") (emphasis added).

5

Applied here, the military judge erred in failing to resolve the substantial conflict and inconsistencies between: (1) whether the Article 128b offense as amended in Specification 2 of Charge V alleged a violation of Article 128b(5) (suffocation) or Article 128b(1) (violent offense); (2) the fact that the amended allegation, asserting that appellant covered his wife's chest and neck with a pillow, failed to meet the legal definition of "suffocation" (which again requires a covering of the nose or mouth); and (3) the fact that the parties amended the specification to expressly delete any reference to the face, yet appellant contended that he suffocated his wife by placing the pillow over her face.[4] Given these contradictions, appellant was not provident to Specification 2 of Charge V, and it must be set aside for legal insufficiency. *See United States v. Kim*, 83 M.J. 235, 238 (C.A.A.F. 2023) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.") (citations omitted).[5]

Finally, because appellant now stands improperly convicted of suffocating his spouse, and the sentence to confinement for that offense resulted in an additional 108 days of confinement, the military judge's error materially prejudiced appellant's rights. *See United States v. Moratalla*, 82 M.J. 1, 4 (C.A.A.F. 2021) ("Even if a guilty plea is later determined to be improvident, a reviewing court may grant relief only if it finds that the military judge's error in accepting the plea "materially prejudice[d] the substantial rights of the accused." Article 45(c), UCMJ.").

### B. The Military Judge's Failure to Rule on Motion to Dismiss

Paragraph 8(b) of the Plea Agreement called for the government to dismiss without prejudice the "charges, specifications, and excepted language" to which appellant pleaded not guilty, which was relevant to Charges III and IV and their specifications. Appellant never entered a plea to either Charge III and its

---

[4] Although the Stipulation of Fact contained a brief reference to appellant's weight on his wife's chest causing breathing problems, the military judge did not pursue this line of inquiry. In any event, because it does not involve the covering of the victim's nose and mouth, this conduct would not have satisfied the legal definition of suffocation.

[5] Appellant does not request that this specification be set aside, but rather asks that we find him guilty of a violation of Article 128b(1), domestic violence by violent offense, by striking the language "and did thereby inflict substantial bodily harm upon her, to wit: impeding her normal breathing." We, however, lack the jurisdiction to grant the remedy appellant seeks. *See United States v. English*, 79 M.J. 116, 121 (C.A.A.F. 2019) ("But there is no authority, statutory or otherwise, that permits the ACCA to except language from a specification in such a way that creates a broader or different offense than the offense charged at trial.").

specification or Charge IV and its specification, and the military judge never entered findings for either of these two charges and specifications. At the outset, the military judge failed to enter not guilty pleas for these charges and specifications as required by Rule for Courts-Martial 910(b), which states, in pertinent part, that if an accused fails to enter a plea, "the military judge shall enter a plea of not guilty." *See also* Article 45(a), UCMJ (if an accused fails to enter a plea, "a plea of not guilty shall be entered in the record, and the court shall proceed as though he pleaded not guilty").

Although the military judge made several references to the "dismissals" during the trial, government counsel never made any motion to dismiss, and the military judge never formally dismissed Charge III and its specification and Charge IV and its specification. Given that the government offered no evidence in support of these charges and their specifications, and no motion to dismiss was made or granted, the military judge erred in not announcing not guilty findings at the conclusion of the trial. *See* R.C.M. 922(a) ("Findings shall be announced in the presence of all parties after they have been determined"); Article 53, UCMJ. ("A court martial shall announce its findings and sentence to the parties as soon as determined"). We are cognizant that under R.C.M. 922(d) and 1104(a)(1) we have the authority to remand this case and direct the military judge to announce not guilty findings in a post-trial Article 39(a) hearing. In the interest of judicial economy, however, we will instead exercise our discretion to dismiss both Charge III and its specification, and Charge IV and its specification.[6]

### C. Convening Authority Option to Withdraw from Plea Agreement

At least partly in response to the decision by the Court of Military Appeals in *United States v. Cook*, 12 M.J. 448 (C.M.A. 1981), R.C.M. 705 was introduced in the 1984 Manual for Courts-Martial (*Manual for Courts-Martial, United States* (1984 ed.) [MCM]) to govern pretrial agreements.[7] R.C.M. 705(e)(4)(B) provides the

---

[6] Contrary to what happened on the record, the Statement of Trial Results ("STR") states that "not guilty" pleas and findings were entered for Charge III and its specification and Charge IV and its specification. We will exercise our discretion to correct the STR to reflect our ruling. *See* Rule for Courts-Martial 1111(c)(2); *United States v. Pennington*, ARMY 20190605, 2021 CCA LEXIS 101, at *5 (Army Ct. Crim. App. 3 Mar. 2021) (summ. disp.) ("Exercising our authority under R.C.M. 1111(c)(2), we note and correct the following issues in appellant's post-trial documents . . . .").

[7] The service court in *Cook* found, absent an authorizing provision in the pretrial agreement, the government could not revive charges that were withdrawn pursuant to

(continued . . .)

7

convening authority the ability to withdraw from a pretrial agreement under any one of four conditions, the relevant condition here being "if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review." R.C.M. 705(e)(4)(B).

The dissent argues our setting aside of Specification 2 of Charge V due to appellant's improvident plea *ipso jure* allows the convening authority to withdraw from the agreement, and they would halt in-progress Article 66 review to solicit the convening authority's decision. We disagree for two reasons.

*Precedent.* Since the inclusion of R.C.M. 705 in the 1984 Manual, this withdrawal provision has been potentially triggered countless times when an appellant's plea of guilty has been found provident with respect to one or more offenses but not others. We have not found an instance in which this court, or any service court, has halted their in-progress Article 66 review and returned jurisdiction to the convening authority to allow an exercise of discretion whether to withdraw from a pretrial agreement. The standard practice has been to set aside the relevant findings of guilty and either reassess the sentence or return the record of trial to the convening authority and authorize a rehearing.[8] This precedent results from, and reinforces, a service court's jurisdiction, which is unaffected by R.C.M. 705's withdrawal provisions.

*Jurisdiction.* Per R.C.M. 1111, the entry of judgment terminates the trial proceedings and initiates the appellate process. When this court receives the record of trial from a court-martial, we receive jurisdiction over the case and, unless it is an interim appeal, we retain jurisdiction over the case until we complete our Article 66 review and take final action in the case. Soliciting the convening authority to make an election whether to withdraw from an agreement after we have completed our review but prior to taking final action would necessitate returning jurisdiction over the case to the convening authority. However, unless and until we return jurisdiction over the case to the convening authority, he has no ability, standing, or

_____

(. . . continued)
the agreement if appellant's guilty plea was held improvident on appellate review. The Court of Military Appeals held reinstatement of the charges in such a scenario was not precluded as a matter of law, *Cook* at 454. R.C.M. 705(e)(4)(B) codified this holding.

[8] If our Article 66 review resulted in the setting aside of *every* specification to which appellant pled guilty, as was the case in *Cook*, we would traditionally set aside the findings and return the case to the convening authority. The convening authority would then elect to withdraw from the agreement or remain bound by it. (see *United States v. Stout*, ARMY 20120592, 2018 CCA LEXIS 174 at *5 (Army Ct. Crim. App. 09 Apr. 2018).

authority to withdraw from the agreement. *See United States v. Boudreaux*, 35 M.J. 291 (C.M.A. 1992), for a general discussion of military appellate jurisdiction. Thus, we need not – and cannot – inquire as to what he *would* do *if* we gave him the opportunity to exercise jurisdiction. Pursuant to R.C.M. 810(f)(1), cited by the dissent, there is no substantial issue to address, or additional factfinding to conduct, which would preclude the completion of our Article 66 review.

Finally, we are unpersuaded by the dissent's argument that this decision leaves the convening authority without recourse for a breach of contract, or provides appellant a windfall. Our final action returns subject matter jurisdiction over the offense at issue to the convening authority. We also hesitate to assign complete responsibility for the improvident plea to appellant. Appellant pled guilty to the crime he committed – the commission of a violent offense against his spouse. That the government incorrectly charged him with an assault by suffocation should inure to the government's detriment, not appellant's. The government had the opportunity to amend the specification to comport with the providence inquiry. Similarly, the military judge had the duty to reject an improvident plea.

## CONCLUSION

Charge III and its specification, and Charge IV and its specification, are DISMISSED. The finding of guilty as to Specification 2 of Charge V is SET ASIDE. Specification 2 of Charge V is DISMISSED. The remaining findings of guilty are AFFIRMED. Upon reassessment, the sentence to a bad-conduct discharge and confinement for 182 days is AFFIRMED.[9]

---

[9] Reassessing the sentence in light of the set aside specification, we are aided by the segmented sentence to confinement and by the plea agreement's requirement to impose a bad-conduct discharge. We assess the impacted specifications in accordance with the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). Based on our experience as judges on this court, we are familiar with the offenses of domestic violence, destruction of non-military property, violation of a lawful order, and absence without leave such that we may reliably determine what sentence appellant would have received for the remaining specifications. Having set aside the conviction for which appellant was sentenced to 290 days confinement, with the sentences to confinement set to run concurrently per the plea agreement, the minimum sentence to confinement appellant was required to receive per the plea agreement was 182 days, which was the minimum required sentence to confinement for the remaining domestic violence conviction. Appellant was sentenced to the minimum 182 days for that offense. As such, we can say with certainty that, without the set aside specification, appellant would have received at least 182 days confinement and the bad-conduct discharge required by the plea agreement.

Chief Judge SMAWLEY, Senior Judge WALKER, Senior Judge FLEMING, Judge MORRIS, Judge POND, and Judge PARKER concur;

ARGUELLES, Judge, joined by PENLAND, Senior Judge dissenting;

I concur in the majority's well-reasoned ruling as to the legal sufficiency of Specification 2 of Charge V (Specification 2) and the military judge's failure to rule on the motion to dismiss. I respectfully disagree, however, with the majority's conclusion to set aside and dismiss the defective specification without first allowing the convening authority the opportunity to exercise his or her authority to withdraw from the plea agreement pursuant to Rule for Courts-Martial [R.C.M.] 705(e)(4)(B).

## A. Precedent

It is well-established that "[a] pretrial agreement in the military justice system establishes a constitutional contract between the accused and the convening authority." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2010) (citing *United States v. Lundy*, 63 M.J. 299, 301(C.A.A.F. 2006)). *See also United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999) ("A pretrial agreement is created through the process of bargaining, similar to that used in any commercial contract. As a result, we look to the basic principles of contract law when interpreting pretrial agreements.") (citations omitted).

In *United States v. Cook*, 12 M.J. 448, 450 (C.M.A. 1982), appellant initially entered into a pretrial agreement in which he pleaded guilty to one specification of unlawful concealment in exchange for the convening authority's dismissal of two larceny specifications. On appeal, the Navy-Marine Corps Court of Military Review held that appellant was improvident to the unlawful concealment specification to which he pleaded guilty. *Id.* The issue before the Court of Military Appeals ("CMA") was whether it was appropriate for the convening authority, on remand, to reinstate the two larceny specifications dismissed as part of the agreement. *Id.* at 452.

The court started its analysis by noting that the plea agreement at issue "was a bargained for *quid pro quo*" where the convening authority agreed to dismiss the larceny charges in return for appellee's plea of guilty to the concealment charge. *Id.* at 454. The CMA in *Cook* further explained:

> If, however, appellee can successfully attack the providence of his guilty pleas, escape the conviction based on those pleas, yet bar the convening authority from resurrecting the withdrawn charges, "the convening authority has, in a sense, not received the expected benefit of his bargain."

Cook is entitled to his bargain, but not to a windfall; in the case at bar the reinstitution of the larceny charge must be ascribed only to the convening authority's proper desire to avoid conferring such a windfall upon appellee. Unless the convening authority can reinstitute the charge of larceny from the Marine Exchange, then, because of the Court of Military Review's ruling as to the improvidence of his guilty plea, Cook will completely escape accountability for either larceny or concealment. Yet, he was guilty of at least one of those crimes, according to his own judicial confession at the first trial. Justice would not be served by such an outcome, nor could such a result have been contemplated by the parties when they entered into the pretrial agreement.

*Id.* at 455 (citing *United States v. Mills,* 12 M.J. 1, 3 (C.M.A. 1981).

The majority indicates that the President promulgated R.C.M. 705 "at least partly" in response to *Cook.* A careful review of the Drafters' Analysis of the 1984 Manual for Courts-Martial [MCM], however, reveals that R.C.M. 705(d)(5)(B), which for the first time codified the convening authority's ability to withdraw when findings are set aside on appeal because a guilty plea is improvident, did not in any way modify or overrule the basic contract law principles espoused in *Cook.* Rather, the only discussion of *Cook* in the analysis pertains to a convening authority's right to withdraw specifications as part of the *initial* plea agreement. Moreover, there is no discussion at all in the Drafters' Analysis pertaining to the convening authority's ability to withdraw from the plea agreement when an appellate court concludes that the findings are improvident. MCM, Drafters' Analysis, App. 21 at A21-35-36 (1984).

While there is a difference between the procedural posture in this case and that in *Cook,* the underlying contract principles are identical. Given that appellant has successfully attacked the providence of his guilty plea to Specification 2, he has breached his agreement with the convening authority – our colleagues in the majority do not hold otherwise. Put simply, appellant agreed to enter guilty pleas to five of the alleged specifications, and in exchange for that promise the convening authority agreed to certain sentence and discharge limitations. Now, by setting aside and dismissing Specification 2 without offering any recourse to the convening authority, this court is rewriting the agreement to say it is "good enough" if appellant admits guilt to only four of the five specifications. In so doing, the majority gives appellant the windfall that *Cook* expressly rejected and diminishes the convening authority's lawful role in the case. Specifically, and as was the case in *Cook,* given that appellant was clearly guilty of at least some type of domestic violence assault for the offense charged in Specification 2, appellant is reaping the unjustified windfall of having both his defective guilty plea set aside and dismissed, and his confinement time reduced from 290 to 182 days. This is not what the

convening authority bargained for, and it does not serve justice, good order, or discipline.

### B. Rule for Courts-Martial 705(e)(4)(B)

Rule for Courts-Martial 705(e)(4)(B) provides:

The convening authority may withdraw from a plea agreement at any time before substantial performance by the accused of promises contained in the agreement . . . or if *findings* are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

Appellant argues that because the Rule uses the word "findings" in the plural, it applies only to those instances in which an appellate court finds that *all* of the specifications to which appellant pleaded guilty are improvident.

First, it is a fundamental principle of statutory interpretation that the singular includes the plural and the plural includes the singular. *See, e.g.,* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise - words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular . . . ."); *Central & Southern Motor Freight Tariff Asso. v. United States,* 843 F.2d 886, 894 (6th Cir. 1988) (rejecting argument that by stating its proposition in the singular necessarily excluded the plural as violating the "basic principle of statutory interpretation – that the singular includes the plural and the plural includes the singular"); *Anmed Health v. Becerra,* 628 F.Supp.3d 219, 236 (D.D.C. 2022) (holding that there is no reason why the "common sense" singular/plural mandate of 1 U.S.C. §1 is also not applicable to regulatory interpretation); *Covington Specialty Ins. Co. v. Sweet Soul, Inc,* _ F.Supp. 3d. _, 2023 U.S. Dist. LEXIS 76332 at *13 (E.D. Mich. 2 May 2023) ("[T]he 'number canon' directs that 'the singular includes the plural (and vice versa)'") (citations omitted).

Simply put, there is nothing in the context of Rule 705 or otherwise, suggesting that the President intended to narrowly limit the use of the term "findings" in R.C.M. 705(e)(4)(B) to apply only to the plural, and thus contradict the fundamental "number canon" principle of statutory interpretation.

Alternatively, even setting aside the number canon, appellant's interpretation of the Rule's use of the word "findings" is not only superfluous, but would lead to absurd results. *See United States v. Sager,* 76 M.J. 158, 162 (C.A.A.F. 2017) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme") citing *United States v. Yates,* 574 U.S. 528,542 (2015); *United States v. Beauge,* 82 M.J. 157, 162 (C.A.A.F. 2022) ("One such fundamental principle [of statutory construction] is that

'the plain language of a [rule] will control unless it leads to an absurd result") (citing *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012)). As noted above, appellant entered into a binding plea agreement in which he agreed, *inter alia*, to enter guilty pleas to five separate specifications in exchange for the convening authority agreeing to limitations on both the sentence and the level of discharge. But, if this court were to set aside and dismiss the findings and sentences for *four* of the five specifications, such a result would significantly undermine, if not obliterate, the original contractual "meeting of the minds" of the parties. Nevertheless, under appellant's reasoning the convening authority would still be bound by all of the obligations to which it agreed, while appellant would reap the benefit of having almost all of the specifications to which he pleaded guilty, as well as a significant portion of his sentence, wiped out. Such a result would run afoul of both the long line of CAAF cases squarely holding that "we look to the basic principles of contract law when interpreting pretrial agreements," and the fundamental holding of *Cook* that an appellant is not entitled to a windfall when he breaches the terms of his plea agreement by successfully attacking the providence of his plea on appeal. 12 M.J. at 455 n.11 ("In the unusual case, where the accused succeeds on appeal in getting his guilty plea vacated, we see no reason to strain the spirit of an agreement to benefit one party, when that party has caused the other to lose its benefit of the bargain.")

Appellant's interpretation of the term "findings" in R.C.M. 705(e)(4)(B) also renders the rule superfluous. For example, if this court on appeal were to find that *all five* of appellant's guilty pleas were improvident, it is not clear why there would need to be a specific rule stating that the convening authority would then have the option to withdraw from the agreement. Put another way, if appellant was not provident to all of the specifications to which he pleaded guilty, there would be no plea agreement left from which the convening authority could withdraw, or be bound to follow on remand.[10]

Finally, under the plain language of R.C.M. 705(e)(4)(B), a convening authority's withdrawal from the plea agreement places "the parties in the pretrial status quo ante" as if the first proceeding never happened. This allows the

---

[10] Any argument that absent a provision expressly allowing the convening authority to withdraw if *all* of the findings were set aside on appeal as improvident, the convening authority would have no choice but to re-enter into the same plea agreement or remand, is without merit. First, such a view would defy both common sense and the core holdings and logic of *Cook, Acevedo, and Smead*. Moreover, there is no support anywhere in either the case law or the basic rules of contract law for the proposition that one party may materially breach the terms of his agreement and then, absent an express rule saying otherwise, force the other party to enter in the same agreement a second time. *See Cook*, 12 M.J. at 455 n.11 ("[W]e see no reason to strain the spirit of an agreement to benefit one party, when that party has caused the other to lose its benefit of the bargain.").

convening authority to proceed anew on both the withdrawn charges and specifications, as well as those to which appellant entered improvident guilty pleas at the first trial. *United States v. Stout*, No. ARMY 20120592, 2018 CCA LEXIS 174 at *8-9 (Army Ct. Crim. App. 9 Apr. 2018) (mem. op.), *aff'd on other grounds* 79 M.J. 168 (C.A.A.F. 2019).

Sidestepping R.C.M. 705 altogether, the majority instead justifies its holding on two separate grounds: (1) their final action returns subject matter jurisdiction over the misconduct captured in Specification 2 to the convening authority; and (2) it is not appellant's fault that he was improvident to Specification 2, as the government incorrectly charged the offense and the military judge failed to reject his improvident plea. Neither one of these purported justifications, however, changes the fact that there is nothing in R.C.M. 705(e)(4)(B) which in any way limits the ability of the convening authority to withdraw from the plea agreement *only* if appellant is at fault *or* if this court fails to authorize a rehearing on the specification at issue.

To the contrary, the plain language of the rule makes clear that once an appellate court sets aside a finding as improvident on appeal, as is the case here, we must provide a mechanism for the convening authority to exercise his discretion as to whether or not to withdraw from the plea agreement. And as is set forth in greater detail below, that mechanism is a limited remand pursuant to R.C.M. 810(f)(1).

## C. Jurisdiction

As described above, given this court's finding that appellant was not provident to Specification 2 of Charge V, pursuant to R.C.M. 705(e)(4)(b) the Convening Authority for the Seventh Army Training Command may now exercise his or her authority to withdraw from the plea agreement.

As such, we are at an impasse with respect to the findings of guilt pertaining to the remaining charges and specifications to which appellant pled guilty. If the convening authority elects to withdraw from the plea agreement, the case will return to the pretrial status quo ante, necessitating a remand to the convening authority to proceed anew on all of the specifications and charges to which appellant pled guilty. On the other hand, if the convening authority elects not to withdraw from the plea agreement, we can then take final action on the remaining specifications and sentence. The question thus becomes, how do we procedurally get the answer to our one question from the convening authority?

The majority correctly notes at the outset that under R.C.M. 1111, once we receive the record of trial from a court-martial we have jurisdiction over the case and, unless it is an interim appeal, we retain jurisdiction until we complete our

14

Article 66 review and take final action. Nonetheless, we have specific authority as part of our review process to return a case to the convening authority in order to address a substantial issue on appeal.

> Rule for Courts-Martial 810(f)(1) expressly provides:
>
> A Court of Criminal Appeals may order remand for additional fact finding, or for other reasons, in order to address a substantial issue on appeal. A remand under this subsection is generally not appropriate to determine facts or investigate matters which could, through a party's exercise of reasonable diligence, have been investigated or considered at trial. Such orders shall be directed to the Chief Trial Judge. The Judge Advocate General, or his or her delegate, shall designate a general court-martial convening authority who shall provide support for the hearing.

*See also* UCMJ Art. 66(f)(3) ("If the Court of Criminal Appeals determines that additional proceedings are warranted, the Court may order a hearing as may be necessary to address a substantial issue . . . ."). Rule for Courts-Martial 810(f)(1) in essence codifies the *DuBay* fact-finding process, and indeed we somewhat frequently return jurisdiction to the convening authority in the middle of our review for a limited fact-finding hearing, and then resume our unlapsed jurisdiction to complete our Article 66 review and take final action.[11]

Rule for Courts-Martial 810(f)(1) plainly provides us with both the authority and jurisdiction to return this matter with a limited remand order to any general court-martial convening authority for a hearing "in order to address a substantial issue on appeal." To reiterate, given the very narrow scope of our remand, the convening authority could *not* take further action on any of the remaining charges and specifications in this case, but rather would be limited to ascertaining the Convening Authority for the Seventh Army Training Command's answer to our question. *See United States v. Carter*, 76 M.J. 293, 295-96 (C.A.A.F. 2017) ("But even when acting on remand, a convening authority may still only take action 'that conforms to the limitations and conditions prescribed by the remand.'") citing *United States v. Montesinos*, 28 M.J. 38, 42 (C.M.A. 1989). *See also* Article

---

[11] Prior to implementation of the Military Justice Act of 2016 on 1 January 2019, we would remand for fact-finding hearings pursuant to *United States v. DuBay*, 17 C.M.A. 147 (1967). As part of the Military Justice Act of 2016, however, Congress enacted Article 66(f)(3), which as noted above provides, "[i]f the Court of Criminal Appeals determines that additional proceedings are warranted, the Court may order a hearing as may be necessary to address a substantial issue, subject to such limitations as the Court may direct and under such regulations as the President may prescribe." The President prescribed the process for ordering such a hearing in Rule for Courts-Martial 810(f).

66(f)(3), UCMJ (remand hearings shall be "subject to such limitations as the Court may direct and under such regulations as the president may prescribe.").

Finally, consistent with *DuBay* and R.C.M. 810(f), upon the completion of the fact-finding hearing in the trial court, and our receipt of the answer to our question, this court would continue to exercise its Article 66 jurisdiction over the case and take final action.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court